Birdie Lee RICHARDS, Appellee,

v.

Tammy HEPFER, Appellant,

v.

Arthur J. Woodley, Appellee.

Superior Court of Pennsylvania.

Submitted Sept. 18, 2000.
Filed Dec. 18, 2000.

Keith A. Noll, Waynesboro, for appellant.

Carol A. Redding, Chambersburg, for Woodley, appellee.

Stephen D. Kulla, Waynesboro, for Richards, appellee.

Before CAVANAUGH, STEVENS and BROSKY, JJ.

STEVENS, J.:

¶ 1 This is an appeal from the custody order entered in the Court of Common Pleas of Franklin County awarding the paternal grandmother primary physical custody of the minor granddaughter (SLW) and permitting Grandmother to relocate to Eufala, Alabama. On appeal, Mother contends (1) the trial court erred in failing to apply the presumption that Mother, as the natural parent of SLW, had a *prima facie* right to custody, and (2) the trial court erred in applying the factors enunciated in *Gruber v. Gruber*, 400 Pa.Super. 174, 583 A.2d 434 (1990), since Grand-

mother is not a custodial *parent*. We affirm.

¶ 2 The relevant facts and procedural history are as follows: When Mother was seventeen years old, and unwed, she gave birth to SLW on May 28, 1994. Since SLW was four months old, she has resided almost exclusively with Grandmother, who is forty-seven years old. SLW has received no financial support from Mother or Father, and Mother has failed to send cards or gifts during holidays, although Father has sent such items. Grandmother takes SLW to the doctor's and dentist's offices, travels with her, and buys her all of the necessities of life. Mother has not maintained a consistent work history; the longest position she held was two and one-half months as a housekeeper for a motel. At some point, Mother was employed as a nude dancer and gave customers massages while she was nude. Grandmother is on disability because she has lupus and receives disability benefits.

¶ 3 During the time SLW has lived with Grandmother, Mother has lived at thirteen separate addresses, Father has resided primarily in prison, and Grandmother has lived at two addresses. Mother does not regularly visit SLW; but rather, she appears unannounced every couple of months and takes SLW for a few days. While SLW is visiting with Mother, she spends most of her time playing with Mother's other three children. Mother does not disclose to Grandmother where she is living and, in an emergency, Grandmother is unable to locate Mother. From March of 1999 to December of 1999, Mother missed twenty-nine scheduled visits with SLW.

¶ 4 On December 10, 1998, Grandmother filed a complaint seeking primary legal and physical custody of SLW,[1] and, on June 25, 1999, she filed a motion for special relief seeking permission to take SLW to Eufaula, Alabama, so that they could visit

Grandmother's family. On August 23, 1999, the trial court entered an order permitting SLW to travel to Alabama with Grandmother for a ten-day period from the date of the order until September 13, 1999, and a seven day period between September 13, 1999, and October 8, 1999. A custody hearing was held on December 13 and 14, 1999, during which Grandmother expressed the desire to move to Eufaula, Alabama with SLW. Grandmother testified that her children were born and raised in Eufaula, her relatives reside in that town, and that her mother was ill and needed her assistance. Grandmother indicated that SLW had visited Eufaula on numerous occasions, had friends in the area, and would attend a good school. ·Grandmother recommended that, if she be permitted to move, physical custody of SLW be given equally to Mother and Father during the summer break and school holidays, and that SLW be permitted to speak to Mother and Father frequently by telephone.

¶ 5 Following the hearing, the trial court granted primary legal and physical custody to Grandmother and permitted Grandmother to relocate to Eufaula, Alabama. Mother filed this timely appeal.[2]

■ ¶ 6 Mother's first claim is that the trial court erred in failing to apply the presumption that Mother, the natural parent of SLW, had a *prima facie* right to custody. We agree with Mother that such a presumption is recognized by this jurisdiction; however, we disagree that the trial court did not properly apply the presumption.

In reviewing custody matters, this [C]ourt has stated that our scope of review 'is very broad. Nonetheless, a broad scope of review should not be construed as providing the reviewing tribunal with a license to nullify the fact-finding functions of the court of the first instance.' We have stated that an ap-

---

**1.** Grandmother has standing to seek custody of SLW pursuant to 23 Pa.C.S.A. § 5313.

**2.** We note that Father has indicated that he agrees with the trial court's order, and he has not filed an appeal with regard thereto.

pellate court may not reverse a trial court's custody order absent a showing that the trial court abused its discretion.

It is axiomatic that in custody disputes, 'the fundamental issue is the best interest of the child.' In a custody contest between two biological parents, 'the burden of proof is shared equally by the contestants....' Yet, where the custody dispute is between a biological parent and a third party, the burden of proof is not evenly balanced. In such instances, 'the parents have a prima facie right to custody,' which will be forfeited only if 'convincing reasons' appear that the child's best interest will be served by an award to the third party. Thus, even before the proceedings start, the 'evidentiary scale is tipped hard, to the [biological] parents' side.'

*Charles v. Stehlik*, 560 Pa. 334, 339, 744 A.2d 1255, 1258 (2000) (citations and quotations omitted). *See T.B. v. L.R.M.*, 753 A.2d 873 (Pa.Super.2000) (holding that biological parents have *prima facie* right to custody over third persons).

The prima facie right to custody of the biological parent, [the] Supreme Court has explained, requires the third party to bear a heavy burden of production and persuasion. Once evidence relevant to the child's best interest is presented, the court must decide whether the evidence on behalf of the third party is weighty enough to bring the scale up to even and then down on the side of the third party.

     ✳     ✳     ✳

Pennsylvania law makes clear that a 'best interest' analysis in any custody dispute should include a number of important factors, such as parenthood; the length of time the child has been sepa-

rated from the party seeking custody; the adverse effect on the child caused by disruption of an established relationship; and the fitness of the party seeking custody.

*T.B.*, 753 A.2d at 889 (citations omitted).

¶ 7 In the case *sub judice*, contrary to Mother's contention, we conclude that the trial court properly applied the presumption that Mother, the biological parent, had a *prima facie* right to custody and that Grandmother had a heavy burden of production and persuasion. Specifically, the trial court summarized the law discussed *supra* and concluded that "[Grandmother] has carried both her burden of production and persuasion and the scale has come down hard on her side." Trial Court Opinion dated 1/20/00 at 5–7.[3]

¶ 8 Having determined that the trial court properly recognized that a presumption in favor of Mother existed, and that Grandmother had a heavy burden of production and persuasion, we now examine Mother's specific contentions regarding the "best interest" analysis. Mother contends that the trial court erred in finding that (1) Grandmother "lives independently, gets around without assistance, is able to drive, maintains her home, and participates in all normal activities of daily living," Trial Court Opinion dated 1/20/00 at 2, and (2) Mother "has not maintained a consistent work history; the longest position she held was for approximately two and one half months as a member of the housekeeping staff at a local motel," Trial Court Opinion dated 1/20/00 at 4.

¶ 9 We have reviewed the notes of testimony and conclude that the trial court's findings of fact are supported by the record. *See* N.T. 12/13/99 at 28, 41; N.T.

---

**3.** We note that Mother cites *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49, 2000 WL 712807 (U.S.Wash. 2000) (plurality), for the proposition that biological parents are favored in custody cases. We have carefully reviewed *Troxel* and conclude that it does not require a result different than that enunciated *supra*. In *Troxel*, 530

U.S. at —, 120 S.Ct. at 2061, the United States Supreme Court concluded that a Washington statute which provided that "[a]ny person may petition the court for visitation rights at any time" was unconstitutionally broad. Such a constitutional concern was not raised in this case.

12/14/99 at 42, 69–71. The trial court determined that the testimony supporting its findings of facts was credible, and we shall not disturb the trial court's credibility determination.

■ ¶ 10 Mother's next contention is that the trial court erred in applying the *Gruber* factors to this case since *Gruber* addresses a relocation petition filed by a **parent** who has primary physical custody, while the case at issue involves a relocation petition filed by a third party (Grandmother) with primary custody. Mother urges this Court to find that the appropriate standard in third party custody cases is the "best interest of the children" without reference to the *Gruber* factors. In this issue of first impression, we conclude that, in relocation cases where the party with primary custody is a third party, the *Gruber* factors are applicable and should be considered as part of an overall "best interest of the child" analysis.

¶ 11 In *Gruber*, this Court enumerated the following three factors for consideration by trial courts:

(1) The potential advantage of the proposed move, economic or otherwise, and the likelihood the move would improve substantially the quality of life for the custodial parent and the children and is not the result of a momentary whim on the part of the custodial parent;

(2) The integrity of the motive of both the custodial and non-custodial parent in either seeking the move or seeking to prevent it; and

(3) The availability of realistic, substitute arrangements which will adequately foster an ongoing relationship between the child and the non-custodial parent.

*Thomas v. Thomas,* 739 A.2d 206, 209 (Pa.Super.1999) (quotation omitted) (*en banc* ).

¶ 12 Mother correctly points to the fact that the *Gruber* factors have not explicitly been applied in cases where primary legal and physical custody is awarded to a third party and the third party seeks permission to relocate out of the state. However, we hold that the *Gruber* factors should be considered in such a situation.

¶ 13 Although there is no case law directly on point, we find this Court's decision in *Clapper v. Harvey*, 716 A.2d 1271 (Pa.Super.1998), to be instructive. In *Clapper,* the non-custodial mother sought to relocate and gain primary custody of the children. Declining to apply the *Gruber* factors, the trial court denied the non-custodial mother's request, and, on appeal, the non-custodial mother argued that the trial court erred in refusing to apply the *Gruber* factors. The father argued that the *Gruber* factors had only been explicitly applied in cases where the "custodial" parent wished to relocate with the child, and not where the "non-custodial" parent sought custody and relocation. In reviewing the issue, this Court stated the following:

As we stated in *Lambert v. Lambert,* 409 Pa.Super. 552, 598 A.2d 561, 565 (1991), even in custody cases involving the relocation of one or both parents, the ultimate objective in resolving the custody matter remains the best interests of the child. The determination of a child's best interests involves the consideration of all relevant factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being. It follows then that the factors outlined in *Gruber*, if deemed relevant and likely to affect the child's physical, intellectual, moral, and spiritual well-being, should also be applied and considered in any custody case involving the relocation of either the custodial or non-custodial parent. Because the factors outlined in *Gruber* are relevant and likely to impact [the child], they should have been considered by the trial court in determining [the child's] best interests.

*Clapper,* 716 A.2d at 1274 (citation omitted).

¶ 14 In the case *sub judice,* we conclude that the factors outlined in *Gruber* are relevant and likely to impact SLW's well-

being. Although the custodian seeking to relocate is not a "parent" in this case, we conclude that the *Gruber* factors are likely to affect SLW's physical, intellectual, and moral well-being, and, therefore, the trial court properly applied the factors in this case. *See Thomas, supra* (holding that the *Gruber* factors are applicable in equal shared custody cases).[4]

We recognize that the exact language of *Gruber* may create some confusion regarding ["custodial parents."] To eliminate such confusion, courts should interpret the *Gruber* factors in the context of relocation of discrete family units. In *Beers v. Beers*, 710 A.2d 1206 (Pa.Super.1998), our Court stated:

> Given its place in the context of a best interests determination, the value of *Gruber* lies not so much with the formulation of a novel inquiry concerning the relocation of the primary family unit, but with its insights into why the elements of that inquiry might be critical.

*Hurley v. Hurley*, 754 A.2d 1283,1285 (Pa.Super.2000).

¶ 15 For all of the foregoing reasons, we affirm.

¶ 16 Affirmed.

¶ 17 CAVANAUGH, J., concurs in the result.

---

4. We note that Mother does not specifically challenge the trial court's analysis concerning the *Gruber* factors. Rather, she contends that the factors should not have been considered at all. In any event, we have reviewed the trial court's decision, and discovered that the trial court considered all three factors and stated reasons supporting the relocation.