K.B. II, K.B. and B.B., Appellees,

v.

C.B.F., Appellant.

Superior Court of Pennsylvania.

Argued March 11, 2003.
Filed Sept. 25, 2003.

Lisa M. Vari, Pittsburgh, for appellant.

James L. Liberto, New Kensington, for appellee.

BEFORE: TODD, BENDER, and KELLY, JJ.

OPINION BY TODD, J.:

¶ 1 C.B.F. ("Mother"), biological mother of K.M.B., III, ("Child"), appeals the Order entered April 25, 2002, in the Court of Common Pleas of Armstrong County awarding full custody of Child to Child's paternal grandparents, B.B. and K.B. ("Grandparents"). For the reasons that follow, we reverse and remand.

¶ 2 K.B., II ("Father"), and Mother were married in the summer of 1994, and Child was born on December 30, 1994. Mother, Father and Child resided with Grandparents in Armstrong County until August 1997. On July 1, 1999, Mother and Child moved to Allegheny County, leaving Father and Grandparents in Armstrong County. Mother and Father were divorced on September 29, 1999. On January 21, 2000, a custody hearing was conducted in Armstrong County before the Honorable Kenneth G. Valasek and, on June 2, 2000, Mother was granted primary physical custody of Child and Father was awarded partial custody. Father has a history of drug and alcohol abuse.

¶ 3 By consent of the parties, in an order entered February 1, 2001, that superceded Father's partial custody order, Grandparents were granted partial custody of Child. Shortly thereafter, based upon unproved allegations of sexual abuse against Mother, Grandparents refused to return Child to Mother for three months pending an investigation and, on March 2, 2001, a temporary emergency custody order was entered requiring that Child remain in Armstrong County. Father then filed a Petition to Modify Custody Order on March 5, 2001, in which he sought primary physical custody of Child. Following an investigation and a determination by Armstrong County Children and Youth Services that the allegations of sexual abuse were unfounded, Mother filed a Petition for Reinstatement of Primary Custody on March 30, 2001. Judge Valasek granted the petition by Memorandum and Order on May 21, 2001, acknowledging that the allegations of sexual abuse had not been proved. Child was then returned to the custody of Mother in Allegheny County, where he entered school in September 2001.

¶ 4 Father's Petition to Modify Custody originally was scheduled for hearing on September 2, 2001. By Order entered September 17, 2001, however,

Grandparents were permitted to intervene in the pending custody action. Neither Mother nor Father challenged Grandparents' standing to intervene at that time. The trial court conducted evidentiary hearings on September 21, 2001 and November 26, 2001 via telephone. On March 21, 2002, Judge Valasek entered a detailed temporary order awarding Grandparents primary physical custody of Child at the conclusion of the school year and subsequently entered a final order to that effect on April 25, 2002. Following the denial of various post-trial motions for reconsideration, Mother timely appealed, asking this Court to consider the following questions:

1. Whether the trial court erred in finding that the Paternal Grandparents met their burden of proof required for granting them primary physical custody of their minor grandchild?
2. Whether the trial court erred in finding that it was in the minor Child's best interests to award custody to the Paternal Grandparents?
3. Whether the trial court improperly delayed the rendering of its decision thereby making most of the facts relied upon in rendering its decision moot as of the date of the final order?

(Appellant's Brief at 9.)

¶ 5 Under our standard of review in child custody matters, an appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. *Silfies v. Webster*, 713 A.2d 639, 642 (Pa.Super.1998). Thus, an appellate court must determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those

conclusions unless they are unreasonable in view of the trial court's findings and are, therefore, an abuse of discretion. *Id.* An abuse of discretion in the context of child custody is more than an error in judgment; it occurs only when the trial court overrides or misapplies the law in reaching its conclusion or when its judgment is manifestly unreasonable or the result of partiality, prejudice, bias, or ill will, as shown by the evidence of record. *Zullo v. Zullo*, 531 Pa. 377, 380, 613 A.2d 544, 545 (1992). The ultimate test is "whether the trial court's conclusions are unreasonable as shown by the evidence of record." *Silfies*, 713 A.2d at 642 (citation omitted).

¶ 6 Furthermore, it is axiomatic that "[t]he paramount concern in a child custody case is the best interests of the child, based on a consideration of all factors that legitimately affect the child's physical, intellectual, moral and spiritual well-being." *Swope v. Swope*, 455 Pa.Super. 587, 591, 689 A.2d 264, 265 (1997). This determination is to be made on a case by case basis. *Myers v. DiDomenico*, 441 Pa.Super. 341, 345, 657 A.2d 956, 957 (1995). Moreover, "[o]nly where [it finds] that the custody order is 'manifestly unreasonable as shown by the evidence of record ...' will an appellate court interfere with the trial court's determination." *Id.* (citations omitted). The broad scope of review attendant to custody matters, however, does not confer upon the reviewing court the license to make independent factual determinations, nor does it authorize us to substitute our judgment for that of the trial court.

¶ 7 With regard to a custody challenge by a third party, our Pennsylvania courts have expressed a strong preference for the rights of biological parents. In *Charles v. Stehlik*, 560 Pa. 334, 744 A.2d 1255 (2000), our Supreme Court articulated this view, stating:

It is axiomatic that in custody disputes, "the fundamental issue is the best interest of the child." In a custody contest between two biological parents, "the burden of proof is shared equally by the contestants...." Yet, where the custody dispute is between a biological parent and a third party, the burden of proof is not evenly balanced. In such instances, "the parents have a 'prima facie right to custody,' which will be forfeited only if 'convincing reasons' appear that the child's best interest will be served by an award to the third party. Thus, even before the proceedings start, the evidentiary scale is tipped, and tipped hard, to the [biological] parents' side."

*Id.* at 339, 744 A.2d at 1258 (2000) (citations and quotations omitted); *see also T.B. v. L.R.M.*, 753 A.2d 873 (Pa.Super.2000) (holding that biological parents have a *prima facie* right to custody over third persons) *aff'd*, 567 Pa. 222, 786 A.2d 913 (2001).

¶ 8 As a backdrop to the case *sub judice*, we note that in *Troxel v. Granville*, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (plurality), the United States Supreme Court reaffirmed its long-standing view that the Due Process Clause of the Fourteenth Amendment of the Constitution protects the interest of parents in the care, custody and control of their children. *Id.* at 65–66, 120 S.Ct. 2054. In *Troxel*, paternal grandparents brought an action under a Washington State statute for increased visitation of their granddaughters. The Court found that the Washington statute, which provided that "any person" may petition the court for visitation of a minor child "at any time" and the court may order visitation rights for any person when visitation may serve the child's best interest, was overbroad and, therefore, violated the mother's rights of substantive due process. *Id.* at 75, 120 S.Ct. 2054. Noting that the grandparents did not aver, and no

court found, that Granville was an unfit parent, *id.* at 68, 120 S.Ct. 2054, the Court struck down the Washington statute. The Court held that "so long as a parent adequately cares for his or her children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Id.* at 68–69, 120 S.Ct. 2054.

¶ 9 Furthermore, the Court found there that the trial judge essentially had substituted his opinion of what would be in the best interest of the children for that of Granville, and erroneously had placed on her the burden of disproving that visitation would be in the best interest of the children. *Id.* at 69, 120 S.Ct. 2054. Moreover, the Court held that "the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made." *Id.* at 72–73, 120 S.Ct. 2054. Because of the fact-specific nature of each case, however, the Court stopped short of holding that specific nonparental visitation statutes violate the Due Process Clause as a *per se* matter. *Id.* at 73, 120 S.Ct. 2054. It is with these standards in mind that we embark upon our review of the present case.

¶ 10 Although not explicitly stated in Grandparents' Petition to Intervene and Petition for Child Custody, their arguments to the trial court and to this Court on appeal make clear that their claim for custody of Child was brought pursuant to our grandparent visitation and custody statute, 23 Pa.C.S.A. § 5313. Following recitation of the allegations of sexual abuse and misconduct on Mother's part that were determined by county caseworkers and the

trial court to be unfounded, Grandparents argued that Child's best interest would be served by awarding primary physical custody of him to them because: 1) Mother was an exotic dancer who purportedly owned an escort service and, therefore, was not available to the Child personally in the evenings; 2) Child complained that he had been involved in some altercations with neighborhood children in Mother's area; 3) Child did not exhibit hyperactive behavior while attending school in Grandparents' area, but did so while attending school in Mother's district; 4) Mother did not seek counseling soon enough for alleged inappropriate sexual behavior despite a court order to do so; and 5) Child would have more frequent contact with his extended family. (Petition to Intervene and Petition for Child Custody, 9/17/01, at 3–5.) With regard to Mother's position as an exotic dancer and owner of an escort service, however, Grandparents acknowledged that "these income-producing activities in and of themselves do not prove the natural mother to be unfit." (*Id.* at 3.)

¶ 11 Section 5313 provides, as follows:

§ 5313. When grandparents may petition

(a) Partial custody and visitation.—If an unmarried child has resided with his grandparents or great-grandparents for a period of 12 months or more and is subsequently removed from the home by his parents, the grandparents or great-grandparents may petition the court for an order granting them reasonable partial custody or visitation rights, or both, to the child. The court shall grant the petition if it finds that visitation rights would be in the best interest of the child and would not interfere with the parent-child relationship.

(b) Physical and legal custody.—A grandparent has standing to bring a petition for physical and legal custody of a grandchild. If it is in the best interest of the child not to be in the custody of either parent and if it is in the best interest of the child to be in the custody of the grandparent, the court may award physical and legal custody to the grandparent. This subsection applies to a grandparent:

(1) who has genuine care and concern for the child;

(2) whose relationship with the child began with the consent of a parent of the child or pursuant to an order of court; and·

(3) who for 12 months has assumed the role and responsibilities of the child's parent, providing for the physical, emotional and social needs of a child, or who assumes the responsibility for the child who has been determined to be a dependent child pursuant to 42 Pa.C.S. Ch. 63 (relating to juvenile matters) or who assumes or deems it necessary to assume responsibility for a child who is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or mental illness. The court may issue a temporary order pursuant to this section.

23 Pa.C.S.A. § 5313.

¶ 12 Recently, in *R.M. v. Baxter*, 565 Pa. 619, 777 A.2d 446 (2001), the Pennsylvania Supreme Court considered whether a grandmother seeking full custody of her grandchild, who previously had been declared dependent and placed in the custody of the county children and youth services agency, had standing to do so under 23 Pa.C.S.A. § 5313. The Court held that the plain language of the statute conferred automatic standing upon the grandmother to seek custody and allowed the grandmother to pursue her claim. *R.M. v. Baxter*, 565 Pa. at 626–27, 777 A.2d at 451.

¶ 13 More recently, in *Adoption of: J.D.T. and J.T.T.*, 796 A.2d 992 (2002), this

Court, in discussing the holding in *R.M.*, specifically held, under the facts of that case, that the automatic standing provision of 23 Pa.C.S.A. § 5313 applies to grandparents pursuing custody and visitation of a child under the statute after the child has been adjudicated dependent. *Id.* at 995. It is from this starting point that we begin our analysis of Grandparents' claim for full custody in the present case.

¶ 14 The trial court, in awarding custody to Grandparents following two evidentiary hearings, issued a Statement of Reasons and Order in which it opined that although "Mother has adequately tended to the child's physical needs" (Statement of Reasons, 3/21/02, at 3), "Grandparents can provide a more nurturing and supportive environment than can Mother." (*Id.* at 4.) He further reasoned that because "Grandparents have a very stable lifestyle" and Grandfather is usually at home, they could provide Child with "plenty of attention" and would not require the services of a babysitter. (*Id.* at 6.)

¶ 15 Noting that "[s]tanding of the Grandparents to participate as parties to this case has not been challenged", the trial court failed to conduct any independent evaluation of the Grandparents' standing to bring such an action and simply opined that the analysis to be utilized in this case is a "'weighted' best interests of the child analysis." (*Id.*) The court then concluded, without extensive analysis, that although there must be "substantial and weighty evidence that such an award is in the best interest of the child ... the evidence of record is sufficient to carry this heavy burden of showing that the best interests of the child would be served by

taking him away from his natural parent." (*Id.* at 7.) Relying on its observation that "the child's emotional bonds are stronger with Grandparents than with either Mother or Father, and the fact that there is good reason to believe Grandparents can better control the child's problematic behavior," the court determined that Child's best interests would be served by awarding primary custody to Grandparents. (*Id.* at 8.)

¶ 16 Underlying Mother's challenge to the trial court's determination that awarding full custody to Grandparents was in Child's best interest, Mother first challenges the trial court's determination that Grandparents had standing to seek custody of Child. (Appellant's Brief at 13–17.) She argues that Grandparents, as third parties, were required to demonstrate a *prima facie* right to custody before being granted standing to seek full custody of Child, but failed to meet that burden and, therefore, should not have been permitted to challenge her fundamental right as Child's natural parent to maintain his care, custody and control. (*Id.*) She further argues extensively that although there are certain circumstances in which grandparents are conferred with standing to challenge a parent for custody that are specifically delineated under Section 5313(b) and under common law principles of *in loco parentis*, none of those circumstances have been demonstrated by the facts of this case and Grandparents, therefore, should not have been permitted to seek custody of Child at all.[1] (*Id.* at 13–28.) She suggests that our Pennsylvania courts have never addressed the specific

1. We note that this Court previously has explained in certain contexts that the term "prima facie right to custody" means only that the party has a colorable claim to custody of the child. The existence of such a colorable claim to custody outside of any statutory right grants standing only where the third party has established *in loco parentis* status. *T.B. v. L.R.M.*, 753 A.2d at 882–83. In the present case, however, Grandparents have made no claim of standing based on an assertion of *in loco parentis* status.

question of "whether a grandparent can, under 23 Pa.C.S.A. § 5313(b), have automatic standing to petition the court for primary custody of their grandchild *if* the complaint is filed against a fit parent who has primary custody of the child" because the "reading of subsection (b) has never been evaluated independent of a child being adjudicated dependent." (*Id.* at 17.)

¶ 17 Grandparents argue, in response, that because the parties previously consented in an earlier proceeding on February 1, 2001, to Grandparents' standing for purposes of a partial custody award of Child and neither party appealed that earlier custody order, Mother, therefore, had waived the opportunity to challenge Grandparents' standing in the present proceeding. (Appellees' Brief at 10.) They further argue that because Mother failed to challenge the Grandparents' standing in the present proceeding at either hearing and did not do so until she filed a Petition for Reconsideration many months later, such challenge is now waived. (*Id.*) Alternatively, they argue that Grandparents do have standing pursuant to Section 5313(b) based on testimony elicited at the hearing that "[i]f the child's [attention deficit hyperactivity disorder] problems cannot be handled adequately by a parent, the child is suffering from 'neglect' and, therefore, subsection b(3) of 23 Pa.C.S.A. § 5313(b) is satisfied." (Appellees' Brief at 12.)

¶ 18 Grandparents' contention regarding waiver is beside the point, however, for the issue of standing in this context is not waivable. Generally, in the context of statutory causes of action, "[w]hen our legislature has designated who may bring an action under a particular statute, a court does not have jurisdiction over the action unless the party bringing the action has standing." *In re Adoption of W.C.K.,* 748 A.2d 223, 228 (Pa.Super.2000). As we

stated in *Grom v. Burgoon,* 448 Pa.Super. 616, 672 A.2d 823 (1996):

> [W]hen a statute creates a cause of action and designates who may sue, the issue of standing becomes interwoven with that of subject matter jurisdiction. **Standing then becomes a jurisdictional prerequisite to an action.** It is well-settled that the question of subject matter jurisdiction may be raised at any time, by any party, or by the court *sua sponte.*

*Id.* at 619, 672 A.2d at 824–25 (citations omitted) (emphasis added). In *Grom,* the appellant alleged that the trial court erroneously raised the issue of standing *sua sponte.* The appellant was a grandparent seeking visitation rights of a child pursuant to the custody and grandparents visitation statute, 23 Pa.C.S.A. § 5313. There, this Court concluded that, because Section 5313 creates a cause of action for grandparent visitation and specifies who may bring an action under its provisions, standing was a prerequisite for jurisdiction. *Id.* at 619, 672 A.2d at 825. Accordingly, we held that the trial court properly considered the question of standing *sua sponte.* *Id.*

¶ 19 In the case before us, as in *Grom, supra,* Grandparents' standing under Section 5313 to seek full custody of Child is a prerequisite to the trial court's jurisdiction over this matter. It was thus incumbent upon the trial court to consider whether the Grandparents had standing to bring the action under the statute and, had the court found that they did not· meet this jurisdictional prerequisite, the court should have dismissed their petition to intervene. Accordingly, we consider the standing question now.

¶ 20 Our analysis must begin with consideration of the express language of Section 5313, which is the vehicle in this Commonwealth by which a grandparent may

seek visitation or custody of a grandchild. Section 5313(a) deals only with a grandparent's ability to petition for partial custody and visitation of a child and does not address a petition for full custody. Section 5313(b) concerns the ability of a grandparent to seek physical and legal custody of a grandchild and, therefore, is applicable to the case before us.

¶ 21 Following our careful reading of Section 5313(b), in light of our Supreme Court's holding in *R.M. v. Baxter, supra,* we are constrained to conclude that the statute confers automatic standing on any grandparent seeking physical and legal custody of his or her grandchildren, regardless of whether there has been a prior determination of unfitness by the parent or dependency of the child. In *R.M.,* in response to the appellant's argument that the grandmother did not have standing to seek physical custody under Section 5313(b) because the child was not substantially at risk, the Court specifically declared that

> The unqualified language of the statute states, "A grandparent has standing to bring a petition for physical and legal

custody of a grandchild." This clear and unambiguous pronouncement cannot be ignored or modified by the subsequent reference to whom the provision, as a whole, is intended to apply. It is well settled that words and phrases contained in a statute shall be construed according to rules of grammar and according to their common and approved usage. *Commonwealth v. Burnsworth,* 543 Pa. 18, 669 A.2d 883 (1995); 1 Pa. C.S. § 1903(a). When the words of a statute are clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. *Id.* at § 1921(b). The language providing that, "This subsection applies to a grandparent who . . . ," refers to the requirements a grandparent must establish to prevail on the merits of the custody claim. This is evidenced by the fact that "this subsection" is entitled, "Physical and legal custody," rather than "Standing."

*Id.* at 626–27, 777 A.2d at 451.[2]

¶ 22 Accordingly, concluding as we must that Grandparents had standing to bring

---

2. Although we are bound to follow our Supreme Court's explicit holding in *R.M.,* and acknowledge the merit of the Court's analysis where a child has been adjudicated dependent, we nevertheless question whether application of the Court's broad holding is equally justified in a case such as the one before us where there has been no finding of unfitness by the court on the part of the parent. In this regard, we recognize the concerns expressed by Justice Saylor in *R.M.,* where, in his dissent, he carefully examined the legislative history of Section 5313 and presented the following sound analysis:

> The majority's conclusion that Section 5313 confers a general right of standing upon all grandparents, regardless of whether they satisfy any of the criteria of Section 5313(b), subjects parents to legal proceedings seeking to deprive them of custody of their children despite having done nothing to suggest that they are unfit. Although

such an effort by grandparents who do not meet the statutory criteria must ultimately fail, according to such a construction, parents must nonetheless endure a full-blown custody proceeding. *See* Majority Op. at 451 ("the circumstances set forth in subsections (1), (2) and (3) are questions of fact to be resolved by the trial court after a hearing held to determine '[i]f it is in the best interests of the child not to be in the custody of either parent and if it is in the best interests of the child to be in the custody of the grandparent' " (citations omitted)). I find such a result inimical to the Legislature's intent as conveyed by its choice of words and to application of principles of statutory construction.

> It may be unfortunate (at least in some circumstances) that, in fashioning Section 5313(b), the General Assembly has not distinguished between situations in which a grandparent's custody petition would

the within action seeking full custody of Child in this case, we turn our attention to whether Judge Valesko's determination that an award of full custody of Child to Grandparents was in Child's best interest.

¶ 23 The trial judge first acknowledged that the analysis required in this case is one of "weighted best interests" based on the fact that the custody challenge is by third parties against a natural parent (Statement of Reasons, 3/21/02, at 6–7), and further declared that "there must be substantial and weighty evidence that such an award [of custody to Grandparents] is in the best interest of the child." (*Id.*) We agree that a weighted best interest analysis is appropriate under Section 5313.

¶ 24 We impliedly held so in *Richards v. Hepfer,* 764 A.2d 623 (Pa.Super.2000), where a maternal grandmother sought custody of a child under Section 5313, stating that in a custody dispute between a biological parent and a third party (in that case, a grandparent), "the burden of proof is not evenly balanced", *id.* at 625, and the biological parent has a *prima facie* right to custody that may only be forfeited with the presentation of convincing reasons that the child's best interest would be served by an award to the third party. *Id.* As was implicit in *Richards,* we find that Section 5313 does not modify the common law presumption that parents have a *prima facie* right to custody over third parties, *see, e.g., Charles v. Stehlik, supra,* and this presumption warrants application of a weighted best interest analysis to grandparents seeking custo-

dy from biological parents under Section 5313. This conclusion is in accord with *Troxel, supra,* where the United States Supreme Court cautioned that if a fit parent's decision regarding his or her child "becomes subject to judicial review, the court must accord at least some special weight to the parent's own determination." *Id.* at 70, 120 S.Ct. 2054.

¶ 25 Following our review of the record before us, therefore, as well as Judge Valesko's opinion, we are not persuaded that the reasons set forth therein are sufficient to warrant the removal of Child from the custody of his biological Mother under a weighted best interest analysis. The trial court specifically found that

> *Mother has adequately tended to the child's physical needs.* She has provided him with adequate food, shelter, and clothing. She has attempted to address his special needs relating to Attention Deficit Hyperactivity Disorder (ADHD) by taking him to a psychiatrist, who has counseled him and prescribed medication as well.

(Statement of Reasons, 3/21/02, at 3–4 (emphasis original).) The court further stated:

> *Mother has some flexibility in her work hours.* As stated above, Mother is a dancer at a gentlemen's club near Pittsburgh.... On average, Mother works four or five days per week, and she has some flexibility in choosing these days.

(*Id.* at 4 (emphasis original).)

¶ 26 The trial court, in determining that sufficient evidence was presented to war-

---

challenge custody reposited in biological parents from those in which the state has undertaken the parental role. While the majority's decision ameliorates the effects of any imprecision in legislative drafting as applied to the circumstances of this case, I would leave it to the General Assembly to make appropriate adjustments where it has evinced its intent to regulate

challenges to custody by third parties, and the guiding policy considerations are at least mixed. In such circumstances, it is my view that the legislative branch represents the superior forum in which to perform the necessary balancing of relevant concerns.

*R.M.,* 565 Pa. at 630–631, 777 A.2d at 453–54 (Saylor, J., dissenting) (footnote omitted).

rant a change in custody, gave particular credence to "the fact that the child's emotional bonds are stronger with Grandparents than with Mother or Father, and the fact that there is good reason to believe Grandparents can better control the child's problematic behavior." (*Id.* at 7.)

¶ 27 We note that nowhere in the trial court's opinion is there any finding that Mother was unfit or that Child was substantially at risk due to "parental abuse, neglect, drug or alcohol abuse or mental illness", *see* 23 Pa.C.S.A. § 5313(b)(3), and we specifically reject Grandparents' argument that Child was at risk due to "neglect" because of their difference of opinion in the method of treatment of Child's ADHD. In fact, the trial court expressly determined that Mother had adequately tended to the child's physical needs.

¶ 28 The trial court then made certain factual findings that it found tipped the evidentiary scale in favor of awarding full physical custody to Grandparents:

*The child often must stay at the home of a babysitter from 9:30 p.m. until 4:30 a.m.* This is made necessary by virtue of Mother's employment as a dancer. Dr. Bush testified that the medication being taken by the child, Clonidine, is intended to promote good sleep, at least in part. The interruption or disturbance of the child's sleep is not in his best interest.

*The child has emotionally bonded more with Grandparents than to Mother or Father.* Dr. Bush unequivocally testified to this. The testimony of the Grandparents particularly that of [B.B.], suggests this conclusion.

*The Grandparents can provide a more nurturing and supportive environment than can Mother.* Dr. Bush, during his interview with the Grandparents found them to be "highly supportive and nurturing in nature." Dr. Bush also observed that the Grandparents were more efficient in managing the child's behavior. The child's problematic behavior decreased during the three month period in 2001 when he lived with Grandparents.

*Numerous extended family members live in the same area where the Grandparents reside.* This is in contrast to the Mother's place of residence in Bellevue, Allegheny County, where the child is relatively isolated from such people. He generally sees members of Mother's family only when she returns to the Kitanning area for a visit.

*The child has expressed a desire to live with Grandparents.* The Court attaches little significance to this because the child is only seven years old. However, the fact does tend to confirm the child's stronger emotional bond to Grandparents.

*The child has sometimes told Grandparents that he doesn't love Mother.* This again points out the contrast between the child's emotional bond with Mother as opposed [to] the bond with Grandparents. Grandmother did testify as to her observation that Mother's relationship with the child "has always run hot and cold."

*Father is not currently suitable to be a custodial parent.* The evidence amply establishes this.

*Grandparents have a very stable lifestyle.* [K.B.], Sr. is disabled and is usually at home. [B.B.] works at a local drug and alcohol rehabilitation facility from 8:00 a.m. to 4:00 p.m., Monday through Friday. Together they can give the child plenty of attention. There would be no extensive use of a babysitter by them.

(Statement of Reasons, 3/21/02, at 4–6 (emphasis in original).)

¶ 29 Based on our careful review of these findings in light of Section 5313(b), under a weighted best interest analysis, we conclude that the trial court abused its discretion in removing Child from his biological Mother's custody and placing him in the custody of Grandparents, particularly where Mother has not been determined to be unfit. Many children have relationships with their parents that "run hot and cold," but this does not justify the state's intrusion or removal of the child from his or her biological parent. Furthermore, we note, as did the trial court, that a seven-year-old's stated preference for custody should be given little credence. A child's stated preference is not controlling as to the ultimate custody determination and must be considered in light of his maturity and intelligence. *McMillen v. McMillen*, 529 Pa. 198, 202, 602 A.2d 845, 847 (1992). We further note that the Grandmother's testimony that Child has sometimes told her that he does not love his Mother similarly should not justify a court's removal of a Child from his fit parent. Moreover, the fact that extended family members reside near Grandparents, albeit a benefit, does not warrant a finding that a complete change in physical custody is in the best interest of the child.

¶ 30 As the United States Supreme Court stated in *Troxel, supra,* where only court-ordered visitation, and not a change in full physical custody, was at stake:

> [S]o long as a parent adequately cares for his or her children (*i.e.,* is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children.

*Troxel,* 530 U.S. at 68–69, 120 S.Ct. 2054 (citation omitted). The Court further cau-

tioned that "the Due Process Clause does not permit a State to infringe on the fundamental right of parents to make child rearing decisions simply because a state judge believes a 'better' decision could be made." *Id.* at 72–73, 120 S.Ct. 2054; *see also Ken R. v. Arthur Z.,* 546 Pa. 49, 55, 682 A.2d 1267, 1271 (1996) ("the legislature has allowed court interference with the parents' right to custody only in rare and exceptional circumstances"); *see also Jackson v. Garland,* 424 Pa.Super. 378, 382, 622 A.2d 969, 970–71 (1993) ("The law protects the natural parent's relationship with his or her child.... In furtherance of this policy, the legislature has specified limited circumstances in which governmental intrusion into the family is warranted.")

¶ 31 Accordingly, because we conclude that the findings of the trial court do not justify a change in full physical custody under Section 5313(b), we reverse the order of the trial court and remand this matter for proceedings consistent with this opinion.

¶ 32 Order **REVERSED.** Case **REMANDED.** Jurisdiction **RELINQUISHED.**