**Nieto v. Hawk**

378

C.P. of Lawrence County, No. 10015 of 2006, C.A.

*Deborah L. Smith*, for plaintiff.
*Jean K. Perkins*, for defendant.

*Joanne D. Nene,* for guardian ad litem.

HODGE, *J.,* Sept. 29, 2014—Before the court for disposition is defendant's petition to modify current custody order and defendant's petition for special relief.

The plaintiff, Cathy Sue Nieto (hereinafter, "mother"), and the defendant, Jason Michael Hawk (hereinafter, "father") are the natural parents of the subject minor children, H.S.H., born September 12, 2000, and M.L.H., born September 20, 2003. The minor children were born during the course of the parties' marriage. Mother and father were divorced in June of 2007. Since the parties' separation, mother has been the primary custodian. The children attend school in the East Palestine City School District, and they have exclusively attended school within that district.

Following the parties' divorce, mother remarried Edgard Nieto (hereinafter, "stepfather"). Mother and stepfather have a nine-month-old son, Edgard Nieto, Jr. Father also remarried. Father and father's wife, Leah Hawk (hereinafter, "stepmother") have an infant daughter.

The current custody order provides mother with primary physical custody. Father enjoys partial custody of the minor children every other weekend during the school year and extended visitation during the summer months. On July 9, 2014, father filed the instant petition to modify current custody order, and this case was scheduled for a custody conciliation conference. Moments before the parties attended the conference, mother's counsel advised Father's counsel that the parties' oldest child had suicidal ideations. Although the child's intentions stemmed back to January of 2014, mother only recently became aware of them. Mother delayed telling father because the child expressed that "she was not feeling that way

anymore." Father, however, was very concerned about H.S.H.'s disclosures and filed a petition for emergency special relief. The court consolidated father's request for modification of custody and petition for special relief, and a hearing was scheduled for September 4, 2014. The court scheduled further hearings for September 5, September 12 and September 18, 2014. Each of father's petitions are now properly before the court for consideration.

In any custody proceeding, the court's main concern is the most appropriate custody arrangements for the minor children. 23 Pa.C.S.A. §5327(a); *K.B. v. C.B.F.*, 833 A.2d 767, 771 (Pa. Super. 2003). In a custody contest, such as the case now before the court, where the dispute arises between two parents, the burden of proof is shared equally between the parties, as the court will not presume that custody should be awarded to a particular parent. *Id.*

In making a determination, the court bases its findings on how the best interests of the child may be served. *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004). It is axiomatic that the paramount concern in a child custody case is the best interests of the child, and the court makes its determination based upon a consideration of all factors legitimately affecting the child's physical, intellectual, moral and spiritual well being. *Id.* Specific factors that a court must consider are set forth in 23 Pa.C.S.A. §5328(a); *see also B.K.M. v. J.A.M.*, 50 A.3d 168 (Pa. Super. 2012) (holding that "best interests of the child" analysis requires consideration of all Section 5328(a) factors). The court will address each of these factors in the following discussion.

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

Father and mother both encourage and permit contact

between the other party and the children. When mother has custody of the children, the children are permitted to contact father and vice versa. Prior to these proceedings, the parties entered into a consent order, dated May 21, 2014. Each party has demonstrated an ability to comply with the provisions of their consent order, but father contends that mother displays a more rigid approach to the parties' shared custody arrangement and is not as flexible as father in resolving requests to alternate or modify the current order. Alternatively, mother stated that there have been instances where father has been offered additional custody and declined to receive the children because his work schedule precluded him from exercising custody.

Overall, the court finds this factor to weigh equally in its determination. A more flexible custody arrangement could only occur if the parties overcame the communication barrier between them. Consequently, the corresponding order of court will direct the parties to attend co-parenting/communication counseling.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

There is insufficient evidence to warrant and present finding of abuse by either party against the other. There was a protection from abuse order against father on mother's behalf, issued on September 5, 2007; this order expired after one year.

The court has present concerns that mother and stepfather demonstrate an unhealthy relationship. Mother's relationship with stepfather seems to be the driving force behind father's request for primary custody.

Father is concerned about the negative effect mother's relationship with stepfather has on the children. Father is also concerned that stepfather is not an appropriate role model for the minor children.

(3) The parental duties performed by each party on behalf of the child.

Both mother and father perform all the necessary tasks associated with raising young girls. Mother and father each demonstrate a willingness to care for the children and assist the children in completing schoolwork and attending school activities. Mother has consistently been the primary caregiver for the minor children, and she has assumed a majority of the responsibility of taking the children to doctor appointments, school events and activities, and attending to the children on a more frequent basis. This factor, therefore weighs in mother's favor.

(4) The need for stability and continuity in the child's education, family life and community life.

Given the emotional instability the children are currently experiencing, the court believes that its determination must especially attend to the children's need for stability and continuity. If the court were to award mother primary custody, the court's finding would be consistent with the history of this case. However, the court is concerned that the children are not being provided with an emotionally stable home environment at mother's residence. The court's concern is based upon the concerns presented by father, the guardian ad litem and the minor children.

If father were to be awarded primary custody, this would be the first time father assumed responsibility for the children on a primary basis, despite the fact that father has consistently exercised custody of the children on a frequent

basis, as provided in the prior orders granting father partial custody. Additionally, the children are very comfortable at father's residence. The real draw-back, however, with father being awarded primary custody, is that a change in custody would cause the children to switch school districts. The court is concerned with the effect that this would have on the children given the circumstances of this case. Father and stepmother attempted to address this concern by stating that stepmother has two nieces and a nephew in the New Castle Area School District. Stepmother's nieces and nephew are close in age to H.S.H. and M.L.H. Father and stepmother stated the children would be available to help Haileigh and Mykenzee transition into a new school district.

Overall, there are positive factors relating to the children's needs for stability and continuity with either parent exercising primary custody, but the court concludes that the benefits gained by the children with father enjoying primary custody outweigh any necessary, yet temporary, disruptions to their schooling. Therefore, this factor weighs in father's favor.

(5) The availability of extended family.

Both mother and father have large extended families available to them to assist in caring for the minor children. The minor children have close relationships with their grandparents, aunts, uncles and cousins from their maternal and paternal families. Therefore, this factor weighs equally in favor of mother and father.

(6) The children's sibling relationships.

H.S.H. and M.L.H. have been described and appear to the court as close siblings. The testimony offered by the children is consistent with this conclusion. The youngest

child, M.L.H., closely associates her desires with H.S.H.'s, and the court believes that any custody arrangement needs to accommodate the children's relationship with one another. Additionally, mother and stepfather have a newborn child, and father and stepmother have a newborn child. H.S.H. and M.L.H. offered a positive response to both of their half-siblings, and the court would like to see these relationships maintained, regardless of which parent is awarded primary custody.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

The testimony offered by Father indicates that his request for modification of custody was based upon the children's desire to live primarily with him. The children expressed this desire to father and attorney Nene, the children's guardian ad litem, consistently, prior to the custody hearing. When the children testified, however, they indicated that they wanted to remain primarily in mother's custody. Mother indicated that she believes the children's statements are attributable to the children's desire to please both of their parents. The minor children were very emotional and visibly upset when they spoke to the vourt, and the court is suspicious of whether mother or father attempted to influence the children's testimony. For these reasons, the court must limit the credibility afforded to the children's testimony regarding their custodial preferences in reaching a determination.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

The testimony presented did not include evidence to support a finding regarding a party's attempt to turn

the children against the other parent. The court will not consider this factor in its determination.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

This factor is extremely influential in the court's determination. It was very apparent to the court when speaking with the minor children that they are going through a lot of emotional issues, especially Haileigh. The children indicated that mother's relationship with stepfather can be aggressive, and that when mother and stepfather fight, the children are intimidated. Additionally, the court is unclear that the children are receiving positive emotional support from stepfather based upon the children's indication that their stepfather is mean to them, and that they are afraid of stepfather.

The court believes that father's household is more emotionally stable because the testimony of father, stepmother and the children constantly indicated a positive relationship between all members of father's household. Furthermore, stepmother testified that she has a good relationship with the children and is willing to support father in his quest for primary custody.

After reflecting on the testimony and circumstances of this case, the court is very concerned about the emotional welfare of the children. In most respects, the children are thriving; academically, socially and physically. On the other hand, H.S.H. is acting in a concerning manner by speaking about suicide and lying as to events occurring between mother and stepfather. What is also perplexing is that even though H.S.H. seems to be struggling on an emotional level, the younger child, M.L.H., who is described as strong minded and perseverant, perceives

H.S.H. in an idealistic manner.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

In this portion of the court's analysis, the court would like to address the issues raised in father's emergency petition for special relief, regarding H.S.H.'s admissions that she had previously considered suicide.

When this issue was first brought before the court, father raised serious concerns about H.S.H.'s statements to mother and about mother's failure to inform father of the same. Mother's counsel acknowledged that there was a delay in mother informing father, but reasoned that the issue should not be considered an emergency because H.S.H.'s statements related back to thoughts she was experiencing in January of 2014. Mother's counsel also stated that mother was concerned, and her concerns were then confirmed, that father would use this information against mother at the upcoming custody conference.

After considering all of the circumstances relating to H.S.H.'s suicidal ideations, the court is convinced that for whatever reason, H.S.H. is acting out in a manner inconsistent with her current academic and social success. The court believes that it was error for mother to minimize H.S.H.'s statements because if nothing else, it was a cry for help and attention, which must be taken seriously. Both mother and father are very fortunate that H.S.H. is presently enrolled in counseling, and that her outcries never manifested themselves in a more substantive manner.

(11) The proximity of the residences of the parties.

The parties reside approximately forty minutes apart. They live in different states and different school districts.

While the court does not believe the distance between mother's residence and father's residence creates a substantial impairment to either party's ability to exercise custody, it does require one parent to enjoy primary custody.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

The court is satisfied that both parties are able to care for the minor children while they are in their custody, or make appropriate arrangements if the parent is unavailable. Given the parties' desire to maximize their time with the minor child, the corresponding custody order shall include a provision that grants the non-custodial parent with the right of first refusal if the custodial parent is unavailable for an extended period of time.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

Mother and father each display resistance in communicating with the other party. Each party also berates the other for their respective faults and values. However, each parent expressed a desire to improve their ability to communicate with the other, and for this reason, the court shall direct the parties to begin co-parenting and communication counseling. The court believes that if the parties establish better communication skills, their level of cooperation will improve and the children's best interests will be served.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

There was no evidence present with respect to drug or alcohol abuse by either party. Therefore, this factor will not be included in the court's determination.

(15) The mental and physical condition of a party or member of a party's household.

Mother and father did not present any evidence to this court, which questioned the mental and physical condition of the opposing party. Mother and father both appear physically healthy, and emotionally stable. Therefore, this factor will not be included in the court's determination.

Having fully addressed the statutory factors proscribed by 23 Pa.C.S.A. §5328(a) and 23 Pa.C.S.A. §§5337(h), the court extends its analysis by discussing the following issues surrounding this custody action.

Mother and father each demonstrate an ability and desire to care for the minor children. The court is convinced that each parent genuinely loves H.S.H. and M.L.H. Further, each parent has established a home for the girls and have extensive support systems in place to help them. Mother and father even have the good fortune of being in relationships with people who want to assist them in raising the subject minor children. But despite all these positive factors, the children are emotionally struggling. This leads the court to conclude that the prior custodial arrangement is not working. For this reason, the court believes that a change in the prior custody order is necessary.

Each parent needs to seriously consider the issues raised by the other during the course of this trial, and they must attempt to improve personally on those issues in order to help their children move past their present circumstances.

For the foregoing reasons, the court will enter the

following order of court granting father's petition to modify custody and emergency petition for special relief:

## ORDER OF COURT

And now, this 29th day of September, 2014, with this case being before the court on defendant's petition for emergency special relief and plaintiff's response, with Deborah L. Smith, Esquire, appearing and representing the plaintiff, Cathy Sue Nieto; Jean K. Perkins, Esquire, appearing and representing the defendant, Jason Michael Hawk; and Joanne Nene, Esquire, appearing as guardian ad litem for the minor children, and in consideration of the testimony and evidence presented, as well as a thorough review of the file in the above captioned case, and consistent with the attached opinion, the court hereby orders and decrees as follows:

1. A custody review conference is hereby scheduled for the 9th day of February, 2015 at 9:00 a.m. in Jury Room #4 of the Lawrence County Government Center, one (1) hour reserved status.

2. The plaintiff, Cathy Sue Nieto, and the defendant, Jason Michael Hawk, are awarded shared legal custody of the minor children. Legal custody is the legal right to make major decisions affecting the best interest of the children. Major decisions affecting the children include, but are not limited to, health, medical, dental, orthodontic, mental health treatment and/or counseling, education, religious training and upbringing. Except in the case of medical or mental health emergencies, the custodial party shall consult with the non-custodial party. Shared legal custody does not give one party final authority in the event of a dispute. The parties shall execute any and all documents or releases necessary to effectuate legal custody, including but not restricted to, authorizations and/or releases for school

reports, medical reports, mental health and/or counseling reports, insurance documents and documents required by state, local or federal authorities. Both parties shall have the right to obtain and review all information records of the child, including medical, dental, psychiatric, educational, and religious record and documents, in accordance with 23 Pa.C.S.A. §5309. The parties shall not enroll the child into curricular or extra-curricular activities without prior notice to and consent from the other party. The parties shall keep the other informed of the children's activities, school events and medical appointments. The parties shall keep the other notified of all important issues regarding the minor children. This order shall serve as a release to any medical, mental health and counseling, educational or religious provider to release reports/information to all parties. Pursuant to 23 Pa.C.S.A. §5336, all parties have access to the child's records and information.

3. Effective, October 13, 2014, defendant/father is awarded primary physical custody of the minor children subject to the partial custody rights of plaintiff/mother as outlined below. The custodial party has the obligation to foster and encourage a healthy relationship between the minor child and the non-custodial party.

4. The plaintiff/mother shall have partial custody of the minor children every other weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m. Mother shall have an additional evening with the minor children each week from after school until 8:00 p.m., and mother shall be responsible for notifying father of her selected evening by Sunday at 6:00 p.m.

5. During the summer months, beginning on the first full week following the completion of the academic school year, the parties shall alternate custody of the minor

children on a week-on, week-off basis. The mother shall enjoy the first full week of custody during the summer break with the minor children. During the summer months, the parties shall exchange custody on Sunday evenings at 6:00 p.m.

6. The custodial holiday schedule shall occur as mutually agreed upon by the parties. In the event the parties cannot agree, the following holiday schedule shall be implemented:

a. For Easter weekend, in the odd numbered years, father shall have the minor children from Saturday at 6:00 p.m. until Sunday at 6:00 p.m. This schedule shall alternate every year thereafter.

b. For the Thanksgiving holiday in the even numbered years, father shall have the minor children from the Wednesday before Thanksgiving at 6:00 p.m. until the Friday after Thanksgiving at 6:00 p.m. This schedule shall alternate every year thereafter.

c. Mother shall have the minor children every Memorial Day. Father shall have the minor children every Labor Day.

d. The mother shall have the minor children every Mother's Day and Father shall have the minor children every Father's Day from 10:00 a.m. until 6:00 p.m.

e. For Christmas in the odd numbered years, the Father shall have the minor children from December 24th at 9:30 a.m. until December 25th at 5:00 p.m., and mother shall have the minor children from December 25th at 5:00 p.m. until December 26th at 9:30 a.m. This schedule shall alternate every year thereafter.

f. The holiday schedule set forth above supersedes the normal custodial provisions of this order.

7. Transportation may be provided by a family member or someone well known to the children. However, the court strongly encourages the plaintiff and the defendant to personally effectuate all custody exchanges. All parties and anyone else involved with transportation shall comply with the laws and regulations of the Commonwealth of Pennsylvania, including those regarding child safety restraint apparatus in any vehicle used to transport the children.

8. The parties are additionally directed to contact Wendy Yeropoli, LPC, at (727) 657-4365, 26 Nesbit Road, Suite 152, New Castle, Pennsylvania 16105 to commence co-parenting/communication counseling within twenty (20) days from the date of this order of court.

9. The parties may modify the terms of this custody order as they both agree from time to time. One party shall not modify these provisions without the consent of the other.

10. The parties are directed to fully cooperate with each other in fulfilling the requirements of this order and all other orders in connection with this matter and to comply with all provisions contained in the order(s). All communications regarding custody issues shall take place directly between parties, never using the minor children as an intermediary.

11. While in the presence of the children, the parties shall not make any remarks or do anything which can in any way be construed as derogatory or uncomplimentary to the other, and it shall be the duty of all parties to uphold the other party as one whom the children should respect and love. To the extent possible, each party shall not

permit any other person to make derogatory comments in the presence of the children. Each party shall refer to the other by the appropriate role names, such as mom, dad, your grandmother, etc.

12. Lawrence County retains jurisdiction of this custody case. Neither party shall remove the children from the jurisdiction of this court with the intent of changing the physical residence of the children without the written consent of the other party or approval of the court. No relocation, as defined in Title 23 Pa.C.S.A. §5322, with the minor children, shall occur without the consent of every person who has custodial rights to the minor children, or without approval of the court. Any person desiring to relocate with the minor children must comply with the obligations of Title 23 Pa.C.S.A. §5337, including, but not limited to, providing the required sixty-day notice.

13. This order of court supersedes all prior custody provisions in the above captioned case. All previous custody orders are null and void.

14. The parties shall abide by the terms of the appendix attached hereto, incorporated herein, and made a part hereof. The parties shall read the appendix immediately and shall familiarize themselves with the provisions contained therein.

15. The parties are obligated to notify the Prothonotary of Lawrence County of any change in address.

16. The prothonotary shall be responsible for properly serving a copy of this order of court and opinion upon all counsel of record; upon any unrepresented parties in this action in accordance with Pa.R.C.P. No. 236, and Rule L 236 and Wendy Yeropoli, LPC, 26 Nesbit Road, Suite 152, New Castle, Pennsylvania 16105.