J-A09035-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.M.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| M.C.K. | : | |
| | : | |
| Appellee | : | No. 1680 MDA 2016 |

Appeal from the Order Entered September 8, 2016
In the Court of Common Pleas of Lancaster County
Civil Division at No(s): CI-15-10913

BEFORE: GANTMAN, P.J., SHOGAN, J., and OTT, J.

MEMORANDUM BY GANTMAN, P.J.: **FILED MAY 30, 2017**

Appellant, J.M.P. ("Father"), appeals from the order entered in the Lancaster County Court of Common Pleas, which granted the Appellee, M.C.K. ("Mother"), primary physical custody of the parties' minor children, M.P.P. and A.E.P. ("Children"), and granted the parties shared legal custody of Children. We affirm.

The relevant facts and procedural history of this case are as follows. The parties were formerly married and are the natural parents of Children, as well as two adult children, M.P. and D.M.P. The parties separated in 2011 and subsequently divorced. After the parties separated, Mother had primary custody of Children, and Father enjoyed liberal partial physical custody of Children through an informal agreement between the parties. The parties' relationship was generally amicable, and they communicated freely

regarding their children. In late 2014, Mother's current husband, R.S.K. ("Step-Father"), moved into Mother's home. Tensions between the parties developed, however, as Step-Father became more involved with Mother. Mother and Step-Father married in 2015.

In the summer of 2015, Mother and Step-Father had an argument. When Mother attempted to leave the room, Step-Father tripped and pushed Mother and threw a television remote at her. On October 30, 2015, Mother and Step-Father had an altercation in the bathroom of Mother's home, during which Step-Father would not let Mother leave the room. When Mother tried to exit the bathroom, Step-Father forcibly blocked the doorway; in doing so, he struck Mother's mouth. As a result of the October 30th incident, Mother filed a Protection From Abuse ("PFA") petition against Step-Father, and two of the parties' children lived with Father for two weeks. Step-Father was also charged with false imprisonment.[1] Mother subsequently withdrew the PFA petition, and Mother and Step-Father participated in marriage counseling.

On December 22, 2015, Father filed a custody complaint against

_____

[1] The record indicates Step-Father's criminal matter stemming from the October 30, 2015 incident was still pending during the underlying custody proceedings. Although Father asserts on appeal that Step-Father's criminal proceedings had concluded before the custody hearings terminated, nothing in the record demonstrates that Father apprised the trial court of the result of the criminal matter or made any argument based on the outcome of the criminal case.

Mother regarding Children and D.M.P., who was then still a minor.[2] In his complaint, Father requested shared legal custody and primary physical custody of Children and D.M.P. The court held a criminal history/risk of harm hearing regarding Step-Father on February 5, 2016. In its opinion, the trial court summarizes the testimony and evidence from the hearing concerning Step-Father's criminal history as follows:

> [Step-Father] testi[fied] that his prior wife obtained a Protection From Abuse Order against him several years ago when said marriage was falling apart. [In September 2008, Step-Father] admittedly confronted his former wife at her place of employment after discovering that she was engaged in an extra-marital affair. As a result thereof, [Step-Father's] former wife obtained the Protection From Abuse Order [against Step-Father]. [Step-Father] was charged with Stalking as a result of the facts alleged in the Protection From Abuse Petition filed by his former wife; however, said criminal charge was dismissed before the York County Court of Common Pleas on November 25, 2009. An additional non-enumerated offense for Harassment was dismissed and [Step-Father] pleaded guilty to a single misdemeanor charge of Disorderly Conduct and received a one year probationary sentence.
>
> Subsequently, on September 19, 2008, [Step-Father] was again charged with offenses of Stalking, Simple Assault, and two counts of Disorderly Conduct as a result of a confrontation he had with a neighbor of his former wife. [Step-Father] credibly testified that there was a verbal confrontation with his former wife's male neighbor, but no actual physical violence occurred. [Step-Father] pleaded guilty to the offense of Stalking and received a sentence of not less than nine months nor more than twenty-three months; the Simple Assault charge was dismissed, one of

---

[2] According to the record, D.M.P. was 17 years old throughout the underlying custody proceedings and is currently 18 years old.

the Disorderly Conduct charges was dismissed; and, [Step-Father] pleaded guilty to the other Disorderly Conduct charge and received a sentence of not less than six months nor more than twelve months. [Step-Father] served this sentence on house arrest. There was no testimony presented that [Step-Father] was involved in any other criminal or violent incident until the Fall of 2015 incident involving Mother.

(Trial Court Opinion, filed November 7, 2016, at 6-7) (internal citations to record omitted). On February 5, 2016, the court determined Step-Father did not pose a risk of harm to Children.

Mother and Father participated in a custody conciliation conference on March 8, 2016. On April 8, 2016, the court approved the conference officer's custody recommendation; the court granted Mother primary physical custody and granted the parties shared legal custody of Children and D.M.P. Subsequently, the court held a custody hearing on June 20, 2016, which continued on June 30, 2016, and July 25, 2016. During the hearings, the court heard testimony from: a Lancaster County Children and Youth Services caseworker; Father; Father's mother; Mother's former live-in boyfriend; Mother; Step-Father; and Mother's mother. The court made clear it would not permit the parties' children to testify as fact witnesses. The court, however, interviewed Children and D.M.P. *in camera* on July 25, 2016.

On September 8, 2016, the trial court granted the parties shared legal custody and granted Mother primary physical custody and Father partial physical custody. Father timely filed on October 7, 2016, a notice of appeal and a contemporaneous statement of errors complained of on appeal per

J-A09035-17

Pa.R.A.P. 1925(a)(2)(i).

Father raises three issues for our review:

> WHETHER THE [TRIAL] COURT…ERRED IN FAILING TO
> FIND [STEP-FATHER] WAS A RISK OF HARM IN LIGHT OF
> OVERWHELMING EVIDENCE SHOWING AN EXTENSIVE
> AND ONGOING HISTORY OF CRIMINAL AND ABUSIVE
> BEHAVIOR AND MENTAL INSTABILITY[?]
>
> WHETHER THE [TRIAL] COURT…ERRED IN EXCLUDING
> EVIDENCE DURING THE RISK OF HARM HEARING
> RELATING TO ANY ABUSE OF [MOTHER] BY [STEP-
> FATHER?]
>
> WHETHER THE [TRIAL] COURT…ERRED IN FINDING THAT
> PRIMARY PHYSICAL CUSTODY WAS APPROPRIATE FOR
> [MOTHER] WHEN THE EVIDENCE OVERWHELMINGLY
> SUPPORTED A SHARED PHYSICAL [CUSTODY] SCHEDULE
> FOR THE PARTIES[?]

(Father's Brief at 10).

On appellate review of a child custody order:

> [O]ur scope is of the broadest type and our standard is
> abuse of discretion. This Court must accept findings of the
> trial court that are supported by competent evidence of
> record, as our role does not include making independent
> factual determinations. In addition, with regard to issues
> of credibility and weight of the evidence, this Court must
> defer to the trial judge who presided over the proceedings
> and thus viewed the witnesses first hand. However, we
> are not bound by the trial court's deductions or inferences
> from its factual findings. Ultimately, the test is whether
> the trial court's conclusions are unreasonable as shown by
> the evidence of record. We may reject the conclusions of
> the trial court only if they involve an error of law, or are
> unreasonable in light of the sustainable findings of the trial
> court.

*S.J.S. v. M.J.S.*, 76 A.3d 541, 547-48 (Pa.Super. 2013) (internal citation

omitted). Additionally:

- 5 -

[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa.Super. 2009) (internal citations omitted).

Further, the current Child Custody Act became effective on January 24, 2011. *See* 23 Pa.C.S.A. §§ 5321–5340. The new Act applies to "disputes relating to child custody matters," *i.e.*, any proceeding, including a petition for relocation, initiated by a **filing** made after the effective date of the Act. 23 Pa.C.S.A. § 5321; *E.D. v. M.P.,* 33 A.3d 73, 76 (Pa.Super. 2011). With respect to a custody order, Section 5328(a) provides:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party

and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Merrill M. Spahn, Jr., we conclude Father's issues merit no relief. The trial court opinions comprehensively discuss and properly dispose of the questions presented. (*See* Trial Court Opinion, filed September 8, 2016, at 3-10; Trial Court Opinion, filed November 7, 2016, at 5-18) (finding: **(1)** Mother and Step-Father expeditiously worked through their differences and obtained counseling, following October 2015 confrontation; Mother and Step-Father were still participating in counseling at time of custody hearing; evidence did not support claim that domestic abuse issues remained between Mother and Step-Father; no allegations or claims suggested Step-Father physically assaulted or threatened Children; no evidence indicated Children and Youth Services made report or investigated any purported violence between Step-Father and Children; **(2)** during criminal history/risk of harm hearing, court permitted Father to question Step-Father as to Step-Father's alleged abusive and criminal behavior concerning offenses enumerated in 23 Pa.C.S.A. § 5329; Father could have inquired as to other offenses per 23 Pa.C.S.A. §

5328(a)(2), but to extent Father failed to do so, any claim that court excluded testimony relating to Step-Father's conduct subject to 23 Pa.C.S.A. § 5328(a)(2) is waived; at time of criminal history/risk of harm hearing, charge of false imprisonment was still pending against Step-Father stemming from October 2015 incident; court did not hear testimony concerning October 2015 incident, because Step-Father had not been convicted of any offense enumerated under 23 Pa.C.S.A. § 5329 arising out of October 2015 confrontation; additionally, Step-Father invoked his Fifth Amendment right regarding questions related to October 2015 incident; false imprisonment charge was also not subject to discretionary review by court, pursuant to 23 Pa.C.S.A. § 5330, because Step-Father was not party in custody matter; court did not review facts involving PFA petition Mother filed against Step-Father after October 2015 event, because petition did not result in finding of abuse subject to review under 23 Pa.C.S.A. § 5329; during proceedings, Father failed to request court to permit additional testimony if Step-Father's criminal action resulted in conviction; following proceedings; Father failed to notify court of any change in status of false imprisonment charge against Step-Father; **(3)** examining and weighing each relevant factor under applicable statutes, court concluded custody decision is in Children's best interests).  The record supports the trial court's rationale. ***See S.J.S., supra***.  Here, the court held a criminal history/risk of harm hearing, interviewed Children *in camera*, and declined to put Children in the

position of having to testify against one or the other parent. As an error correcting Court, we have no reason to gainsay the trial court's decision in that regard, even if we might have liked more information under the circumstances. *See R.M.G., Jr., supra*. The trial court had the best opportunity to explore any complaints Children might have had and to assess the value of those complaints.[3] *See id.* If Father has additional grounds to invoke the trial court's authority on custody, he can move to modify custody on those grounds through proper procedure and present his claims to the trial court in the first instance. As to this appeal, we affirm on the basis of the trial court's opinions.

Order affirmed.

---

[3] "Issues not raised in the [trial] court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Issues not raised in a Rule 1925 concise statement of errors will likewise be deemed waived. *Linde v. Linde Enterprises, Inc.*, 118 A.3d 422, 430 (Pa.Super. 2015), *appeal denied*, ___ Pa. ___, 129 A.3d 1243 (2015); *J.P. v. S.P.*, 991 A.2d 904, 908 (Pa.Super. 2009) (applying Rule 1925 waiver standards in custody dispute context). Where an appellant fails to raise or develop an issue on appeal properly, this Court will not consider the merit of the claim. *Butler v. Illes*, 747 A.2d 943 (Pa.Super. 2000).

Here, during the three days of custody hearings, Father failed to challenge the sufficiency of the trial court's evaluation of Children and D.M.P. for emotional abuse. Similarly, Father did not raise any issue in his Rule 1925 statement related to the court's purported lack of attention to emotional abuse of Children. Father raised no issue regarding emotional abuse of Children in his brief on appeal. In fact, Father made this claim for the first time at oral argument, when he asked this Court for a remand to consider whether Children suffered emotional abuse. Accordingly, Father waived this claim. *See* Pa.R.A.P. 302(a), *supra*; *Linde, supra*; *Butler, supra*.

Judge Shogan joins this memorandum.

Judge Ott concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/30/2017

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CIVIL ACTION - LAW

J. M. P. ,
      Plaintiff

vs.

M. C. K ,
      Defendant

No. CI-15-10913

## **OPINION**

The instant matter is before the court on Plaintiff, J. M. P. 's (hereinafter, "Father"),

Complaint for Custody filed on December 22, 2015. Following evidentiary hearings held before

the court on June 20, 2016, 2016; June 30, 2016; and, July 25, 2016, which were attended by the

parties with their respective counsel, this matter is ripe for review.

## I. PROCEDURAL HISTORY

Father filed a Complaint for Custody on December 22, 2015 against Defendant, M. C. K,

(hereinafter, "Mother"), with respect to their minor children: D. M. P.

; M. P. P. ; and, A. E. P.

By way of Order entered on December 30, 2015, the court scheduled a Criminal History Hearing

pursuant to 23 Pa. C.S.A. §5329 for January 15, 2016. Upon a joint request of counsel for the

parties, the Criminal History Hearing was rescheduled for February 5, 2016.

The matter proceeded to a Criminal History Hearing on February 5, 2016. At the

conclusion of said hearing, the court issued an Order dated February 5, 2016 finding that R. S. K.

("Step-Father"), a household member of Mother, did not pose a current risk of harm to the minor

children, nor was he in need of any counseling. The Court scheduled a custody conciliation

conference for March 8, 2016.

The matter proceeded to a custody conciliation conference on March 8, 2016. The parties were unable to reach an agreement. Accordingly, the court approved the recommendation of the conference officer and entered an Order dated April 8, 2016 granting shared legal custody of the minor children to the parties; primary physical custody to Mother; and, partial physical custody to Father. The Court scheduled a custody hearing for June 20, 2016.

On June 20, 2016, the Custody Hearing commenced. Inasmuch as there was insufficient time to complete the hearing on June 20, 2016, the Court entered an Order dated June 21, 2016 continuing the hearing on June 30, 2016. On July 25, 2016, the Court interviewed the minor children, which concluded the evidentiary hearing in this matter.

## II.  BRIEF FACTUAL OVERVIEW

Mother and Father are the parents of three minor children:  D. M. P.;  M. P. P.  ; and,  A. E. P.  The parties were married, but separated in 2011. Mother has been the primary custodian of the minor children since the parties' separation; however, Father has exercised liberal periods of partial physical custody by agreement of the parties.

Father has resided in a three bedroom home located at 139 Groff Road, Quarryville, Lancaster County, Pennsylvania with his mother,  W. P.  , for approximately five years. D. M. P. and M. P. P. share a bedroom in Father's residence. Father shares a bedroom with A. E. P. Paternal Grandmother has her own bedroom. Father's residence is located in the Solanco School District. Father's residence is located approximately two to three minutes away from Mother's residence. Father is employed with Cauler Waste Disposal. Father works Monday through Friday. Father's employment schedule varies, but he begins work at either 3:00 a.m. or 4:00 a.m. and his shifts end anywhere between 12:30 p.m. and 5:00 p.m.

2

Mother resides in a three bedroom home located at 109 Dawn Street, Quarryville, Lancaster County, Pennsylvania with her husband, Step-Father. Mother is currently in the process of completing renovations to the children's bedrooms. D.M.P. and M.P.P. temporarily sleep in the living room. Mother's residence is located in the Solanco School District. Mother is self-employed as a driver providing transportation for members of the Amish community. Mother has a variable work schedule. Mother works on Wednesday from 7:00 a.m. until 8:15 a.m. and 2:00 p.m. until 3:30 p.m.; Thursday and Friday from 5:00 a.m. until 8:15 a.m., 2:00 p.m. until 3:30 p.m., and 4:15 p.m. until 6:00 p.m.

The facts relevant to the Court's inquiry, as well as an analysis of the factors enumerated by 23 Pa. C.S. §5328, will be set forth in greater detail in the Discussion herein.

## III. STANDARD OF REVIEW

In making the custody determination, the court's guiding principle is the best interest of the [children], in accordance with the factors set forth in 23 Pa. C.S. § 5328. J.R.M. v. J.E.A., 33 A.3d 647 (Pa. Super. 2011). "This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the [children]." Id. "All of the factors listed in 23 Pa. C.S. §5328(a) are required to be considered by the trial court when entering a custody order." J.R.M., 33 A.3d at 652. The weight accorded each of these factors is for the trial court. Id. The test as to the best interest of the [children] when two parents are involved is evaluated on a scale that is initially weighed equally as to each parent. Sawko v. Sawko, 625 A.2d 692, 695 (Pa. Super. 1993).

## IV. DISCUSSION

Father is seeking shared legal custody and primary physical custody of the minor children. Mother is not in agreement with Father's request. Mother would like to continue to share legal

3

custody of the minor children and retain primary physical custody of the minor children with Father exercising periods of partial physical custody. At the present time, in consideration of the factors set forth in 23 Pa. C.S. §5328(a) as they relate to the minor children's best interest in this case, based on the evidence presented at the evidentiary hearings, the Court finds:

1. There was no evidence presented suggesting that either party has intentionally attempted to limit or prevent contact between the children and the other party. Neither party has intentionally inhibited telephone contact with the children. The court believes that the parties have similar abilities to encourage and permit frequent and continuing contact between the children and the other party; however, Mother's new husband and this litigation has stifled those abilities. The court firmly believes that Father need recognize and accept that Mother's husband will inherently play a role in the children's lives. Mother's husband must recognize and accept that it is the firm responsibility of the parties to communicate directly with each other and co-parent the children. The parties need to recognize the importance of frequent and continuing contact between the minor children and their parents and strive to improve their efforts to encourage the children to maintain such contact.

2. Based upon the totality of the evidence presented, there was no credible evidence presented to suggest that any party, or any members of their respective households, pose a current risk of harm to the children. To that end, the court incorporates the testimony of the Criminal Risk of Harm Hearing pursuant to 23 Pa. C.S.A. §5329 conducted on February 5, 2016. The court believes that both parties possess the ability to provide adequate physical safeguards and supervision for the minor children. The court rejects Father's arguments that there is ongoing domestic violence in Mother's home with her new husband; that Mother is not able to provide adequate sleeping arrangements for the children; and, that Mother's residence is not safe because

4

D.M.P. was allegedly sexually assaulted by her boyfriend in Mother's residence. While the court recognizes that there was a short period of time in the Fall of 2015 when there were marital difficulties between Mother and her husband, said issues appear to have been resolved. The court also rejects Father's argument that Mother's residence does not allow for adequate sleeping quarters inasmuch as the court found as credible the testimony that Mother has been renovating the children's bedrooms. While the court is concerned that Mother failed to notify Father immediately of the alleged sexual assault, the court notes that Mother took appropriate steps to immediately remove the alleged perpetrator from her residence in order to provide safety for D.M.P. The Lancaster County Children and Youth Social Service Agency closed their case and no criminal charges have been filed. The court does not have any continuing concerns in this regard inasmuch as the alleged perpetrator is no longer residing in Mother's residence and is not in contact with D.M.P.

Mother contends that the children are not safe at Father's residence because he allegedly smokes cigarettes and marijuana inside the residence, and his residence is overcrowded. Mother failed to provide any credible evidence that Father smokes marijuana and the court believes that Father does not smoke inside his residence when the children are in his custody, although he likely smokes in his bedroom when the children are not in his custody. The court also recognizes that there is conflicting testimony as to whether the parties' oldest child, M.P., and his girlfriend and child reside with Father; however, the court finds Mother's claims in this regard to be overstated in an attempt to advance her position in this litigation and the court notes that Mother's residence is also crowded in nature.

There was limited involvement with the family by the Lancaster County Children and Youth Social Service Agency with respect to truancy involving the parties' oldest child, M.P.,

5

and a claim that M. P. was bullying the other children. M. P. went to reside with his father and, therefore, the Agency closed their case. In May 2015, there was a report from law enforcement regarding D. M. P. having been sexually assaulted by her boyfriend. The Agency contacted Mother to determine whether D. M. P. 's boyfriend was a household member. Inasmuch as he was not a household member, the Agency screened out the case on May 20, 2015 without the necessity of any further involvement. (Factor 2.1)

3. With respect to the parental duties performed by the parties on behalf of the children, the court believes that both Mother and Father are well suited to provide for the children's essentials of life, such as cooking, cleaning, hygiene, etc., although Mother may be capable of tending to more of said duties in light of the inherent flexibility of her work schedule.

4. The court believes that both parties provide stability in the children's education, family, and community life. Both parties spend quality time with the children engaged in family activities and trips; as well as outdoor activities, such as fishing. The court does note that Mother previously withdrew D. M. P. from a traditional educational program without Father's agreement; however, D. M. P. is now back in a traditional educational setting and seems to have the ability to adequately cope with her anxiety issues with the assistance of the support system currently in existence.

5. Paternal Grandmother resides with Father. Maternal Grandmother resides in close proximity to Mother's residence. Mother's husband's family reside in York, Pennsylvania. The court finds as credible the testimony presented that the relationship between the children and the entirety of Mother and Father's families is appropriate and positive in nature. While the relationship between the children and their step-father may have been difficult at first, the court

6

believes that the children have adapted to their new routine at Mother's residence that includes step-father's involvement in their lives.

6. The minor children have an older brother, M. P. M. P. is the oldest child of the parties. When M. P. resided with Mother, the relationship between M. P. and the minor children was strained. The court finds as credible the testimony of the minor children that they currently have an improved relationship with M. P. The minor children have an appropriate and loving relationship with one another, despite the occasional sibling squabble.

7. The court spoke with the minor children, individually, to ascertain their preferences. D.M.P., who is seventeen years of age, did not seek to alter the current schedule inasmuch as she does not believe that Father can handle any additional periods of custody. Currently, D.M.P. only goes to Father's residence when she desires. D.M.P. believes that it would be beneficial for M.P.P. and A.F.P. to spend more time individually with Father. M.P.P. , who is thirteen years of age, is content with the current schedule of custody, but would like to spend time at her Father's residence whenever she desires. In essence, M.P.P. desires that the custodial schedule return to the way it was before Mother remarried. Before Mother remarried, Father and the children were able to make spontaneous plans to spend time together. M.P.P. also indicated to the court that she is not comfortable spending time alone with Mother's husband. A.E.P., who is nine years of age, is desirous of spending more time with Father. A.E.P. would like to alternate weeks in the summer with the parties, and also desires to spend one-on-one time with Father.

8. The court does not believe that either party is intentionally attempting to turn the children against the other party. The parties deny that they have done so and there was no evidence submitted that any party has intentionally done so. While the court does believe that Mother has

spoken to the children about this litigation, the court does not believe that she has done so with any ill will or in any attempt to try to turn the children against Father. The parties need to understand the importance of not speaking with the children about custody matters and to continue in promoting a loving relationship with the absent party. The court encourages the parties not to allow any lingering hostilities toward each other resulting from this litigation to effect the children.

9. The court firmly believes that both parties are capable of maintaining a loving, stable, consistent, and nurturing relationship with the children adequate for the children's emotional needs at the children's particular current stages in life. Both parties have demonstrated a genuine desire to remain active and involved in the children's lives. Both parties appear to have a true bond with the children, although the court believes that Mother possesses a stronger bond with all three children. While D.M.P. does not regularly go to Father's residence, she does maintain a relationship with Father that suits her at this stage of her life. Despite a period of discord between Mother and her husband, Mother is exhibiting greater stability in her marriage, which is positively impacting the children. Mother has also taken the necessary steps to assist D.M.P. in stabilizing her schooling and her mental health concerns.

10. Both parties are currently capable of attending to the daily physical, emotional, developmental, educational, and special needs of the children, although the court believes that Mother is better suited to do so in light of the flexibility of her work schedule and stronger bond with all three children. While both parties have been involved in the medical care arrangements for the children, Mother has been able to oversee the children's counseling and medical needs. A.E.P. is hyper-active and D.M.P. suffers from social anxiety. By all accounts, the children now perform well academically and do not have any significant behavioral problems. The court

8

believes that the children's current stability is as a direct result of the consistent and predictable routine that the parties have followed with respect to the custody schedule.

11. Mother and Father reside in Quarryville, Lancaster County, Pennsylvania. Mother's residence is located approximately two to three miles from Father's residence.

12. Both Mother and Father have made necessary child care arrangements in the past and the court believes that the parties could continue to do so in the future for the minor children. Maternal Grandmother is available for Mother if she needs child care. Additionally, Mother can rely on D.M.P. and her new husband for child care, if necessary. Mother has the unique ability to also bring A.E.P. with her in her vehicle when she drives for work. Paternal Grandmother is available to care for the children in the mornings at Father's residence, although she also leaves early for work.

13. The court believes that there is currently a high level of conflict between the parties. Based upon the testimony presented, it is apparent to the court that the parties were previously capable of extreme cooperation for the benefit of the minor children; however, such cooperation has waned over time. Said positive cooperation ended at the time of Mother's remarriage. Father and Mother's husband are openly hostile with each other to the extent that they are not allowed on each other's property. This has currently caused significant tension between the parties. Various instances of discord were elicited at the hearing, including a disagreement over the interpretation of "after school" as stated in the Custody Order and an insistence by Mother that the children be returned during a major snowstorm because it was "their" custodial time. The parties can no longer discuss issues related to custody of the children in person or over the telephone. Mother has insisted that all communication be done solely by text message. The court has extreme concern that such directive has come from Mother's husband, but strongly encourages Mother to again

9

engage in open dialogue with Father pertaining to issues involving the children. Additionally, the court similarly hopes that the parties will discontinue utilizing D.M.R to convey messages to each other. The court strongly encourages the parties to continue to improve their ability to communicate. Despite the difficulties between the parties, the court believes that the parties maintain the ability to effectively co-parent the children and encourages the parties to strive to do so.

14. There was no evidence presented sufficient to establish a history of drug and alcohol abuse by Mother or Father or any member of their respective households, so long as M. P. and his girlfriend do not reside with either party. The court is concerned that M. P. and his girlfriend may currently be using illegal drugs. The court notes that Mother attempted to convince the court that Father smokes marijuana based on a poster that he has in his residence. The court does not have any concerns that Father has an issue of drug abuse. The court believes that Mother is overstating her concerns in order to advance her position in this litigation.

15. The court does not have any concerns with the mental or physical condition of any party, or any member of their respective households. Although Father has a learning disability, said condition is not an impediment to his parenting the children.

16. None.

Upon consideration of the factors set forth in 23 Pa. C.S. §5328(a) as they relate to the minor children's best interest in this case, the Court finds that it is in the best interest of the minor children for Mother and Father to retain shared legal custody; Mother be granted primary physical custody of the minor children; and, Father be granted partial physical custody in accordance with the attached Order.

10

## ORDER

AND NOW, this 8th day of September 2016, upon consideration of Father's Complaint for Custody filed on December 22, 2015 and following evidentiary hearings held before the Court on June 20, 2016, 2016; June 30, 2016; and, July 25, 2016, which were attended by the parties with their respective counsel, it is hereby ORDERED that:

**I.    Legal Custody**

Legal custody of the minor children:  D. M. P.                              ; M. P. P.
.; and, A. E. P.                    , shall be shared by Mother and Father.  Both Mother and Father shall have the right to participate in the major decisions affecting the minor children, including, but not limited to, medical, religious, and educational decisions, and each shall have equal access to medical, dental and school records, the residence address and telephone number of the minor children and the other party.  The party having primary custody of the minor children shall provide the other party with advance information on a timely basis regarding school programs, events, meetings, and teacher conferences involving the minor children.

**II.    Primary Physical Custody**

Primary physical custody of the minor children;  D. M. P.                         .;
M. P. P.                         .; and,  A. E. P.                    ), is granted to Mother.

**III.    Partial Physical Custody**

A.    Partial physical custody of the minor children;  D. M. P.
;  M. P. P.                         ; and, A. E. P.                    ),
is granted to Father every other weekend from Friday at 6:00 p.m. to Monday at school; every

11

Wednesday at 6:00 p.m. to Thursday at school; and at additional times as agreed between the parties.

B.     During the summer, Father shall exercise additional periods of partial physical custody of the minor child, _M. P. P._                          , every other Tuesday from 6:00 p.m. until 9:00 p.m., beginning on the first Tuesday after the completion of the academic year.

C.     During the summer, Father shall exercise additional periods of partial physical custody of the minor child, _A. E. P._                   , every other Thursday at 6:00 p.m. until 9:00 p.m., beginning on the second Thursday after the completion of the academic year.

## IV.     Holidays

A.     The parties shall alternate the holidays of Easter, Memorial Day, the Fourth of July, Labor Day, and Thanksgiving. In 2016 and all even-numbered years thereafter, Mother shall have custody on Easter, the Fourth of July and Thanksgiving, while Father shall have custody on Memorial Day and Labor Day. In 2017 and all odd-numbered years thereafter, Father shall have custody on Easter, the Fourth of July and Thanksgiving, while Mother shall have custody on Memorial Day and Labor Day. The times for such periods of holiday custody shall be from 10:00 a.m. until 6:00 p.m. on the day of the holiday.

B.     Christmas:  In 2016 and all even-numbered years thereafter, Father shall have custody from 6:00 p.m. on December 24 until 3:00 p.m. on December 25, and Mother shall have custody from 3:00 p.m. on December 25 until 6:00 p.m. on December 26. In 2017 and all odd-numbered years thereafter, Mother shall have custody from 6:00 p.m. on December 24 until 3:00 p.m. on December 25, and Father shall have custody from 3:00 p.m. on December 25 until 6:00 p.m. on December 26.

12

C. Mother shall have custody on Mother's Day and Father shall have custody on Father's Day from 10:00 a.m. until 6:00 p.m.

D. Holiday periods of custody shall take precedence over all regularly scheduled periods of custody or partial custody.

## IV. Transportation

Unless the parties agree otherwise, the party who is receiving custody shall provide transportation for each custody exchange; however, Father shall provide all transportation for his additional periods of custody with M, P, P. and A, E, P during the summer.

## V. Additional Provisions

A. Both parties shall ensure that all homework is completed.

B. Neither party shall smoke in the presence of the children nor allow others to do so and shall not smoke in enclosed spaces while in the presence of the children.

C. Each party shall provide timely notice of all medical appointments for the minor children to the other party.

D. Each party shall immediately notify the other party by telephone of any serious illness or other emergency that may arise while the minor children are in his or her custody.

E. Each party shall permit reasonable telephone access to the minor children while the minor children are in his or her custody.

F. Each party shall encourage the minor children to love and respect the other party. No party shall make or allow others to make any disparaging or derogatory remarks about the absent parties in the presence of the minor children. The parties shall make certain the minor children are ready on time for the transfer of physical custody from one party to the other.

G. Each party is encouraged to accommodate the reasonable requests of the other party

13

for alterations of any agreed upon schedule, as the circumstances and the best interests of the minor children require.

H.     Neither party shall attempt to alienate the affections of the minor children from the other party.

I.     The terms of the Order may be modified at any time upon mutual consent of the parties or further Order of Court.

## RELOCATION NOTICE

IF YOU ARE PROPOSING TO RELOCATE TO ANOTHER AREA WITH THE CHILDREN NAMED IN THIS CUSTODY ACTION, you must comply with the requirements of Section 5337 of the Pennsylvania custody law which includes sending notice of your proposed move to every other individual who has custody rights to the children and providing specific information concerning your relocation. The law may be found at 23 Pa. C.S.A. §5337. If you do not comply with the notice provision or provide the required information, the Court has the ability to consider your failure as an element in the custody or relocation decision.

BY THE COURT:

_____
MERRILL M. SPAHN, JR., JUDGE

ATTEST: _____ Clerk

Copies to:     Holly Filius, Esquire, Counsel for Plaintiff
               James D. Wolman, Esquire, Counsel for Defendant

**NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA. R.C.P. NO. 236
NOTIFICATION - THE ATTACHED DOCUMENT
HAS BEEN FILED IN THE CASE
PROTHONOTARY OF LANCASTER CO., PA
DATE:**     9.8.16

14

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

J. M. P.,
      Plaintiff

      vs.

              No. CI-15-10913

M. C. K,
      Defendant

## OPINION PURSUANT TO RULE 1925(a) OF THE PENNSYLVANIA RULES OF APPELLATE PROCEDURE

BY: SPAHN, JR., J.

Plaintiff, J. M. P. (hereinafter, "Father") has filed a Children's Fast Track Appeal of the court's September 8, 2016 Order regarding Father's Complaint for Custody, which was filed on December 22, 2015 in the instant custody action. The reasons for the court's decision on Father's complaint are contained in the September 8, 2016 Opinion and Order. In response to the allegations contained in Father's Concise Statement of the Matters Complained of on Appeal Pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure (Children's Fast Track), the court further details its rationale for the September 8, 2016 Opinion and Order herein.

## I. PROCEDURAL HISTORY

Father filed a Complaint for Custody on December 22, 2015 against Defendant, M. C. K. (hereinafter, "Mother"), with respect to their minor children: D. M. P.; M. P. P.; and, A. E. P.. By way of Order entered on December 30, 2015, the court scheduled a Criminal History Hearing pursuant to 23 Pa. C.S.A. §5329 for January 15, 2016. Upon a joint request of counsel for the parties, the Criminal History (Risk of Harm) Hearing was rescheduled for February 5, 2016.

24

The matter proceeded to a Criminal History (Risk of Harm) Hearing on February 5, 2016. At the conclusion of said hearing, the court issued an Order dated February 5, 2016 finding that R, S, K, ("Step-Father"), a household member of Mother, did not pose a current risk of harm to the minor children, nor was he in need of any counseling. The court scheduled a custody conciliation conference for March 8, 2016.

The matter proceeded to a custody conciliation conference on March 8, 2016. At such time, the parties were unable to reach an agreement. Accordingly, the court approved the recommendation of the conference officer and entered an Order dated April 8, 2016 granting shared legal custody of the minor children to the parties; primary physical custody to Mother; and, partial physical custody to Father. The court scheduled a custody hearing for June 20, 2016.

On June 20, 2016, the Custody Hearing commenced. Inasmuch as there was insufficient time to complete the hearing on June 20, 2016, the Court entered an Order dated June 21, 2016 reconvening the hearing on June 30, 2016. Inasmuch as there was insufficient time to complete the hearing on June 30, 2016, the court interviewed the minor children on July 25, 2016, which concluded the evidentiary hearings in this matter.

Following the completion of the evidentiary hearings, the court entered a final Opinion and Order on September 8, 2016. Father filed a timely Notice of Appeal on October 7, 2016.

## II.  SUMMARY OF THE FACTS

Mother and Father are the parents of three minor children:  D, M, P. ; M, P, P.  ; and, A, E, P. (N.T., June 30, 2016 at 207) The parties were married, but separated in 2011. (N.T., June 30, 2016 at 227) Mother has been the primary custodian of the minor children since the parties'

2

separation; however, Father has exercised liberal periods of partial physical custody by agreement of the parties. (N.T., June 30, 2016 at 227-228)

Father has resided in a three bedroom home located at 139 Groff Road, Quarryville, Lancaster County, Pennsylvania with his mother, W. P. , for approximately five years. (N.T., June 20, 2016 at 31-32) D.M.P. and M.P.P. share a bedroom in Father's residence. (N.T., June 20, 2016 at 33) Father shares a bedroom with A.E.P. *Id.* Paternal Grandmother has her own bedroom. *Id.* Father's residence is located in the Solanco School District. (N.T., June 20, 2016 at 125) Father's residence is located approximately two to three minutes away from Mother's residence. (N.T., June 20, 2016 at 32) Father is employed with Cauler Waste Disposal. (N.T., June 20, 2016 at 79) Father works Monday through Friday. (N.T., June 20, 2016 at 80) Father's employment schedule varies, but he begins work at either 3:00 a.m. or 4:00 a.m. and his shifts end anywhere between 12:30 p.m. and 5:00 p.m. (N.T., June 20, 2016 at 80-81)

Mother resides in a three bedroom home located at 109 Dawn Street, Quarryville, Lancaster County, Pennsylvania with her husband, Step-Father (N.T., June 30, 2016 at 207) At the time of the evidentiary hearing, Mother is currently in the process of completing renovations to the children's bedrooms in her home. (N.T., June 30, 2016 at 290-292) D.M.P. and M.P.P. were temporarily sleeping in the living room. (N.T., June 30, 2016 at 291) Mother's residence is located in the Solanco School District. (N.T., June 20, 2016 at 125) Mother is self-employed as a driver providing transportation for members of the Amish community. (N.T., June 30, 208) Mother has a variable work schedule and works on Wednesday from 7:00 a.m. until 8:15 a.m. and 2:00 p.m. until 3:30 p.m.; Thursday and Friday from 5:00 a.m. until 8:15 a.m., 2:00 p.m. until 3:30 p.m., and 4:15 p.m. until 6:00 p.m. *Id.*

3

## III. STANDARD OF REVIEW

### A. Trial Court Standard of Review

#### i. *Child Custody*

The paramount concern in child custody proceedings is the best interest of the child. Moore v. Moore, 634 A.2d 163, 169 (Pa. 1993). In making the custody determination, the court's guiding principle is the best interest of the [children], in accordance with factors set forth by 23 Pa. C.S.A.§5328. The test as to the best interest of the [children] when two parents are involved is evaluated on a scale that is initially weighed equally as to each parent. Sawko v. Sawko, 625 A.2d 692, 695 (Pa. Super. 1993). In a custody action, the particular circumstances of the case must be considered, and each case decided on its own individual facts. N.H.M. v. P.O.T., 947 A.2d 1268, 1273 (Pa. Super. 2008); E.A.L. v. L.J.W., 662 A.2d 1109, 1118 (Pa. Super. 1995).

#### ii. *Shared Custody*

This court has broad discretion in awarding shared custody. In re Wesley J.K., 445 A.2d 1243 (Pa. Super 1982). Although shared custody in appropriate circumstances is desired, there is no presumption in the law favoring shared custody. Schwarcz v. Schwarcz, 548 A.2d 556 (Pa. Super. 1988). The court must engage in a full, fair, and comprehensive examination of the best interest of the [children]. Id.

### B. Appellate Standard of Review

It is well established that the scope of appellate review in child custody disputes is of the broadest type – abuse of discretion. In re Arnold, 428 A.2d 627, 628 (Pa. Super. 1981); Com. ex rel. Spriggs v. Carson, 368 A.2d 635 (Pa. 1977). An abuse of discretion in the context of child custody does not consist merely of an error in judgment. K.B.H. v. C.B.F., 833 A.2d 767 (Pa.

4

Super. 2003); T.B. v. L.R.M., 753 A.2d 873 (Pa. Super. 2000), order aff'd, 786 A.2d 913 (Pa. 2001). Abuse of discretion exists only when the trial court overrides or misapplies the law in reaching its conclusion or when its judgment is manifestly unreasonable or the result of partiality, prejudice, bias, or ill will, as shown by the evidence of record. N.H.M. v. P.O.T., 947 A.2d 1268, 1272 (Pa. Super. 2008); K.B.II v. C.B.F., 833 A.2d 767 (Pa. Super. 2003).

An appellate court is bound by the trial court's factual findings if they are supported in the record; the appellate court exercises its own independent deductions and inferences from facts as found by the trial court judge. Anderson v. McVay, 743 A.2d 472 (Pa. Super. 1999); K.W.B. v. E.A.B., 698 A.2d 609 (Pa. Super. 1997). Because the Superior Court's role does not include making independent factual determinations, when reviewing a custody order, the Superior Court must accept findings of the trial court that are supported by competent evidence of record. J.M.R. v. J.M., 1 A.3d 902, 911 (Pa. Super. 2010) quoting Collins v. Collins, 897 A.2d 466, 471 (Pa. Super. 2006); In re K.T.E.L., 983 A.2d 745, 749 (Pa. Super. 2009). With regard to issues of credibility and weight of the evidence, the Superior Court must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. J.M.R., 1 A.3d at 911 quoting Collins, 897 A.2d at 471.

## IV. DISCUSSION

### A. Concise Statement of the Matters Complained of on Appeal –Averment 1

In his Concise Statement of the Matters Complained of on Appeal, Father initially raises the following issue:

"Whether the [c]ourt committed prejudicial error in failing to find that Appellee's husband was a risk of harm to the parties' children."

5

The court firmly believes that it did not commit an error of law and/or abuse its discretion in finding that Step-Father was not a risk of harm to the parties' children. The court's determination with respect to Step-Father was supported by the factual record presented before the trial court. In making such determination, the court notes that it found as credible Step-Father's testimony that his prior wife obtained a Protection From Abuse Order against him several years ago when said marriage was falling apart. (N.T., February 5, 2016 at 6) Step-Father admittedly confronted his former wife at her place of employment after discovering that she was engaged in an extra-marital affair. (N.T., February 5, 2016 at 7) As a result thereof, Step-Father's former wife obtained the Protection From Abuse Order to keep Step-Father. *Id.* Step-Father was charged with Stalking as a result of the facts alleged in the Protection From Abuse Petition filed by his former wife; however, said criminal charge was dismissed before the York County Court of Common Pleas on November 25, 2009. (N.T., February 5, 2016 at 7-10) An additional non-enumerated offense for Harassment was dismissed and Step-Father pleaded guilty to a single misdemeanor charge of Disorderly Conduct and received a one year probationary sentence. (N.T., February 5, 2016 at 10)

Subsequently, on September 19, 2008, Step-Father was again charged with offenses of Stalking, Simple Assault, and two counts of Disorderly Conduct as a result of a confrontation he had with a neighbor of his former wife. (N.T., February 5, 2016 at 12-14). Step-Father credibly testified that there was a verbal confrontation with his former wife's male neighbor, but no actual physical violence occurred. (N.T., February 5, 2016 at 14) Step-Father pleaded guilty to the offense of Stalking and received a sentence of not less than nine months nor more than twenty-three months; the Simple Assault charge was dismissed, one of the Disorderly Conduct charges was dismissed; and, Step-Father pleaded guilty to the other Disorderly Conduct charge and

6

received a sentence of not less than six months nor more than twelve months. (N.T., February 5, 2016 at 12) Step-Father served this sentence on house arrest. (N.T., February 5, 2016 at 12-13) There was no testimony presented that Step-Father was involved in any other criminal or violent incident until the Fall of 2015 incident involving Mother. (N.T., February 5, 2016 at 11)

In October 2015, Step-Father and Mother were involved in a single, isolated confrontation that resulted in Step-Father being charged with False Imprisonment. (N.T., February 5, 2016 at 15-17 and 20) Mother also obtained, and subsequently withdrew, a Temporary Protection From Abuse Order against Step-Father. (N.T., February 5, 2016 at 68-70) The court found as credible Mother's testimony that she and Step-Father had an argument in the bathroom of their residence and she wanted to leave the bathroom. (N.T., February 5, 2016 at 68) Step-Father wanted to complete their conversation so he blocked Mother from leaving the bathroom. (N.T., February 5, 2016 at 68-69) When Mother attempted to push her way out of the bathroom, Step-Father swung his arm to attempt to block Mother from leaving and struck her on the lip. (N.T., February 5, 2016 at 69) As a result, Step-Father was charge with False Imprisonment. (N.T., February 5, 2016 at 69). The parties were able to expeditiously work through their differences and obtain counseling, which was continuing at the time of the Custody Hearing. (N.T., February 5, 2016 at 70-71). Further, the court notes that there were no allegations raised or claims that Step-Father ever physical assaulted or threatened the minor children. After consideration of the totality of the testimony and evidence presented at the Criminal History (Risk of Harm) Hearing pursuant to 23 Pa. C.S.A. §5329 conducted on February 5, 2016, the court determined that Mother's husband, Step-Father, did not pose a current risk of harm to the children, nor was he in need of any counseling. (N.T., February 5, 2016 Order).

7

Additionally, after consideration of the totality of the testimony and evidence presented at the Custody Hearing held on June 20, 2016; June 30, 2016; and, July 25, 2016, and the prior testimony from the Criminal History (Risk of Harm) Hearing, which was incorporated into the record at the time of the Custody Hearing, the court noted its observations and determinations in detail regarding all factors enumerated by 23 Pa. C.S.A. §5328 in the September 8, 2016 Opinion and Order concluding that there was no credible evidence presented to suggest that any party, or any members of their respective households, posed a current risk of harm to the children. (N.T., September 8, 2016 Opinion and Order at 4-6) As finder of fact, it is axiomatic that the trial court is free to give a witness' testimony whatever weight it deems appropriate. C.R.F. v. S.E.F., 45 A.3d 441, 445 (Pa. Super. 2012). A trial court is free to believe all, part, or none of each witness' testimony. *Id.* After weighing the credibility of the parties and witnesses, the court determined, in its analysis of Factor 2 of 23 Pa. C.S.A. §5328, that both parties possessed the ability to provide adequate physical safeguards and supervision for the minor children. (N.T., September 8, 2016 Opinion and Order at 4) The court rejected Father's argument that there was ongoing domestic violence in Mother's home with Step-Father. (N.T., September 8, 2016 Opinion and Order at 4) The court recognized that there was a short period of time during the Fall of 2015 when there were marital difficulties between Mother and her husband; however, said issues appeared to have been an isolated incident. (N.T., September 8, 2016 Opinion and Order at 5) There was no evidence to support a claim of any lingering concerns produced of record.

The court also noted in the September 8, 2016 Opinion and Order that, at the Custody Hearing, there was testimony from the Lancaster County Children and Youth Social Service Agency that there was limited involvement with the family by the Lancaster County Children and Youth Social Service Agency with respect to truancy involving the parties' oldest child,

8

M, P, ; as well as and a claim that M, P, was bullying the other children at a time when M, P, was residing with Mother. (N.T., September 8, 2016 Opinion and Order at 5-6) M, P, subsequently relocated to reside with his father and, therefore, the Agency closed their case. (N.T., September 8, 2016 Opinion and Order at 6) Additionally, in May 2015, there was a report from law enforcement regarding D, M, P, having been sexually assaulted by her boyfriend. (N.T., September 8, 2016 Opinion and Order at 6) The Agency contacted Mother to determine whether D, M, P, 's boyfriend was a household member. (N.T., September 8, 2016 Opinion and Order at 6) Inasmuch as he was not a household member, the Agency screened out the case on May 20, 2015 without the necessity of any further involvement. (N.T., September 8, 2016 Opinion and Order at 6) Mother took appropriate steps to immediately remove the alleged perpetrator from her residence in order to provide safety for D, M, P, (N.T., September 8, 2016 Opinion and Order at 5) At no time was there ever a report or investigation by the Agency involving any purported violence between Step-Father and the children.

The court's decision to find that Step-Father did not present a risk of harm to the children was supported by the factual record, did not override or misapply the law, and was in no way manifestly unreasonable or the result of partiality, prejudice, bias, or ill will.

**B.     Concise Statement of the Matters Complained of on Appeal –Averment 2**

In his Concise Statement of the Matters Complained of on Appeal, Father next raises the following issue:

"Whether the [c]ourt committed prejudicial error in excluding testimony relating to the Appellee's husband's abusive and criminal behavior and by not staying the Risk of Harm Hearing and subsequent Custody Hearing until the criminal matters then pending against

9

Appellee's husband were disposed of so that the potential risk of harm to the children could be fully litigated."

## §5329. Consideration of criminal conviction.

(a) **Offenses.**--Where a party seeks any form of custody, the court shall consider whether that party or member of that party's household has been convicted of or has pleaded guilty or no contest to any of the offenses in this section or an offense in another jurisdiction substantially equivalent to any of the offenses in this section. The court shall consider such conduct and determine that the party does not pose a threat of harm to the child before making any order of custody to that parent when considering the following offenses:

18 Pa.C.S. Ch. 25 (relating to criminal homicide).
18 Pa.C.S. § 2702 (relating to aggravated assault).
18 Pa.C.S. § 2706 (relating to terroristic threats).
18 Pa.C.S. § 2709.1 (relating to stalking).
18 Pa.C.S. § 2901 (relating to kidnapping).
18 Pa.C.S. § 2902 (relating to unlawful restraint).
18 Pa.C.S. § 2903 (relating to false imprisonment).
18 Pa.C.S. § 2910 (relating to luring a child into a motor vehicle or structure).
18 Pa.C.S. § 3121 (relating to rape).
18 Pa.C.S. § 3122.1 (relating to statutory sexual assault).
18 Pa.C.S. § 3123 (relating to involuntary deviate sexual intercourse).
18 Pa.C.S. § 3124.1 (relating to sexual assault).
18 Pa.C.S. § 3125 (relating to aggravated indecent assault).
18 Pa.C.S. § 3126 (relating to indecent assault).
18 Pa.C.S. § 3127 (relating to indecent exposure).
18 Pa.C.S. § 3129 (relating to sexual intercourse with animal).
18 Pa.C.S. § 3130 (relating to conduct relating to sex offenders).
18 Pa.C.S. § 3301 (relating to arson and related offenses).
18 Pa.C.S. § 4302 (relating to incest).
18 Pa.C.S. § 4303 (relating to concealing death of child).
18 Pa.C.S. § 4304 (relating to endangering welfare of children).
18 Pa.C.S. § 4305 (relating to dealing in infant children).
18 Pa.C.S. § 5902(b) (relating to prostitution and related offenses).
18 Pa.C.S. § 5903(c) or (d) (relating to obscene and other sexual materials and performances).
18 Pa.C.S. § 6301 (relating to corruption of minors).
18 Pa.C.S. § 6312 (relating to sexual abuse of children).
18 Pa.C.S. § 6318 (relating to unlawful contact with minor).
18 Pa.C.S. § 6320 (relating to sexual exploitation of children).
Section 6114 (relating to contempt for violation of order or agreement).
The former 75 Pa.C.S. § 3731 (relating to driving under influence of alcohol or controlled substance).

75 Pa.C.S. Ch. 38 (relating to driving after imbibing alcohol or utilizing drugs). Section 13(a)(1) of the act of April 14, 1972 (P.L.233, No.64), known as The Controlled Substance, Drug, Device and Cosmetic Act, to the extent that it prohibits the manufacture, sale or delivery, holding, offering for sale or possession of any controlled substance or other drug or device.

**(b) Parent convicted of murder.**--No court shall award custody, partial custody or supervised physical custody to a parent who has been convicted of murder under 18 Pa.C.S. § 2502(a) (relating to murder) of the other parent of the child who is the subject of the order unless the child is of suitable age and consents to the order.

**(b.1) Parent convicted of certain sexual offenses.**--
(1) Notwithstanding any provision of this chapter to the contrary and subject to paragraph (2), if a parent who is a victim of any of the offenses set forth in this paragraph objects, no court shall award any type of custody set forth in section 5323 (relating to award of custody) to the other parent of a child conceived as a result of any of the following offenses for which the other parent has been convicted:

18 Pa.C.S. § 3121.
18 Pa.C.S. § 3122.1.
18 Pa.C.S. § 3124.1, where the offense involved sexual intercourse.
18 Pa.C.S. § 3124.2 (relating to institutional sexual assault), where the offense involved sexual intercourse.
18 Pa.C.S. § 4302.

(2) A court may award any type of custody set forth in section 5323 to a parent who has been convicted of an offense under paragraph (1) if:
(i) the parent who is a victim had an opportunity to address the court;
(ii) the child is of suitable age and consents to the custody order; and
(iii) the court determines the award is in the best interest of the child.

(3) Paternity of the child shall be established by voluntary acknowledgment of paternity or blood, genetic or other paternity testing acceptable to the court. The cost of the testing shall be borne by the parent who was convicted of the offense.

**(c) Initial evaluation.**--At the initial in-person contact with the court, the judge, conference officer or other appointed individual shall perform an initial evaluation to determine whether the party or household member who committed an offense under subsection (a) poses a threat to the child and whether counseling is necessary. The initial evaluation shall not be conducted by a mental health professional. After the initial evaluation, the court may order further evaluation or counseling by a mental health professional if the court determines it is necessary.

**(d) Counseling.**--
(1) Where the court determines under subsection (c) that counseling is necessary,

11

it shall appoint a qualified professional specializing in treatment relating to the particular offense to provide counseling to the offending individual.

(2) Counseling may include a program of treatment or individual therapy designed to rehabilitate the offending individual which addresses, but is not limited to, issues regarding physical and sexual abuse, the psychology of the offender and the effects of the offense on the victim.

**(e) Subsequent evaluation.--**

(1) At any time during or subsequent to the counseling under subsection (d), the court may require another evaluation to determine whether further counseling is necessary.

(2) If the court awards custody to a party who committed an offense under subsection (a) or who shares a household with an individual who committed an offense under subsection (a), the court may require subsequent evaluations on the rehabilitation of the offending individual and the well-being of the child subsequent to the order. If, upon review of a subsequent evaluation, the court determines that the offending individual poses a threat of physical, emotional or psychological harm to the child, the court may schedule a hearing to modify the custody order.

**(f) Costs.--**The court may order a party to pay all or part of the costs of the counseling and evaluations under this section.

23 Pa. C.S.A. §5329.

**5330. Consideration of criminal charge.**

**(a) Expedited hearing.--**A party who has obtained information under 42 Pa.C.S. § 1904 (relating to availability of criminal charge information in child custody proceedings) or otherwise about a charge filed against the other party for an offense listed under section 5329(a) (relating to consideration of criminal conviction) may move for a temporary custody order or modification of an existing custody order. The court shall hold the hearing under this subsection in an expeditious manner.

**(b) Risk of harm.--**In evaluating any request under subsection (a), the court shall consider whether the party who is or has been charged with an offense set forth in section 5329(a) poses a risk of physical, emotional or psychological harm to the child.

**(c) No prejudice.--**Failure to either apply for information under 42 Pa.C.S. § 1904 or act under this section shall not prejudice any party in a custody proceeding.

23 Pa. C.S.A. §5330.

An evidentiary Criminal History (Risk of Harm) Hearing pursuant to 23 Pa. C.S.A. §5329 was conducted by the court in order to review Step-Father's enumerated offenses, which included a conviction for stalking his former wife's neighbor and a Final Protection From Abuse Order obtained by Step-Father's former wife against him. The court allowed Father's counsel to engage in a complete inquiry and cross-examination of Step-Father's alleged abusive and criminal behavior related to the enumerated offenses set forth in 23 Pa. C.S.A. §5329 at the Criminal History (Risk of Harm) Hearing. (N.T., February 5, 2016 at 28-40 and 56-57) If there was any additional alleged abusive and/or criminal behavior pertaining to any non-enumerated offenses, then Father was free to inquire and cross-examine Step-Father concerning such behaviors during the Custody Hearing; however, inasmuch as Father's counsel failed to do so, any claim that the court excluded testimony relating to Step-Father's alleged abusive and criminal behavior subject to Factor 2 of 23 Pa. C.S.A. §5328, which would involve any non-enumerated offenses not covered in the Criminal History (Risk of Harm) Hearing, is waived by Father. (N.T., June 30, 2016 at 355-369)

The court notes that there was a pending charge for False Imprisonment against Step-Father, in which Mother was the alleged victim, at the time of the Criminal History (Risk of Harm) Hearing. The court did not hear testimony surrounding said pending charge inasmuch as it was not a conviction subject to review under 23 Pa. C.S.A. §5329. Moreover, Step-Father invoked his Fifth Amendment rights and refused to answer any questions concerning the incident that resulted in the False Imprisonment charge. The pending charge for False Imprisonment against Step-Father was also not subject to discretionary review by the court pursuant to 23 Pa. C.S.A. §5330 inasmuch as Step-Father was not a party to the instant matter.

13

Additionally, the court notes that there was a Temporary Protection From Abuse Order prohibiting Step-Father from having any contact with Mother, which was withdrawn by Mother. Step-Father also invoked his Fifth Amendment rights and refused to answer any questions concerning the incident that resulted in the filing of the Protection From Abuse Petition, which was the same incident that involved the filing of the False Imprisonment charge. Accordingly, the facts involving the Protection From Abuse Petition were not reviewed by the court in the Criminal History (Risk of Harm) Hearing inasmuch as the Temporary Protection From Abuse Petition did not result in a finding of abuse, which would make it subject to review under 23 Pa. C.S.A. §5329.

The court further notes that Father did not file a Petition for Special Relief to notify the court, after the completion of the evidentiary hearings on July 25, 2016 and prior to the entry of the September 8, 2016 Opinion and Order, that there was any change in the status of the pending charge for False Imprisonment against Step-Father so as to potentially trigger a Supplemental Criminal History (Risk of Harm) Hearing pursuant to 23 Pa. C.S.A. §5329, nor did Father ever file a request with the court to permit additional testimony in the event that Step-Father's pending charge was fully litigated and resulted in a conviction. Father did not file for reconsideration of the September 8, 2016 Opinion and Order of this court to request consideration of any additional enumerated offense subject to 23 Pa. C.S.A. §5329. Father retains the remedy at this time to file a Petition for Modification of the September 8, 2016 Opinion and Order regarding any additional enumerated offense pursuant to 23 Pa. C.S.A. §5329 that has not already been fully litigated.

The court did not commit an error of law and/or abuse its discretion as there was no basis to stay the Criminal History (Risk of Harm) Hearing and subsequent Custody Hearing inasmuch as all criminal convictions that would trigger a review pursuant to 23 Pa. C.S.A. §5329 and

14

§5330 were properly considered before entering an Order of Custody. At no time did Father request a stay of the Criminal History (Risk of Harm) Hearing or Custody Hearing, nor is the court aware of any authority to support such a request. The court has an obligation to promptly dispose of a custody case pursuant to Rule 1915.4 of the Pennsylvania Rules of Civil Procedure. In this matter, the court conducted the Custody Hearing as expeditiously as possible and rendered a decision in compliance with the Pennsylvania Rules of Civil Procedure.

Father had every opportunity to inquire as to Step-Father 's alleged abusive and criminal behavior as it related to the issue of any potential risk of harm to the children based upon convictions for enumerated offense subject to 23 Pa. C.S.A. §5329 in the proper forum of a Criminal History (Risk of Harm) Hearing, which was subsequently incorporated into the September 8, 2016 Opinion and Order and considered in the court's analysis of Factor 2 at the completion of the Custody Hearing. The court's decision to proceed with a Criminal History (Risk of Harm) Hearing and subsequent Custody Hearing did not override or misapply the law and was in no way manifestly unreasonable or the result of partiality, prejudice, bias, or ill will.

C.    **Concise Statement of the Matters Complained of on Appeal – Averment 3**

In his Concise Statement of the Matters Complained of on Appeal, Father lastly raises the following issue:

"Whether the [c]ourt committed prejudicial error by failing to award shared physical custody of the children when the court found all factors under Pa. C.S.A. §5328 to be essentially equal between the parties and the record supports a finding of shared custody."

The court properly applied the law to the facts of this case as set forth in 23 Pa. C.S.A. §5327(a), which provides as follows:

15

### §5327. Presumption in cases concerning primary physical custody

> **(a) Between parents.** – In any action regarding the custody of the child between the parents of the child, there shall be no presumption that custody should be awarded to a particular parent.

23 Pa. C.S.A. §5327(a). The court did not make a presumption that custody should be awarded to Mother. The court set forth its analysis of the custody factors pursuant to 23 Pa. C.S.A. §5328 in the September 8, 2016 Opinion and Order after the completion of the evidentiary hearings based on the evidence set forth during the Criminal History (Risk of Harm) Hearing and the Custody Hearing. The court hereby incorporates the findings and analysis of the custody factors set forth in the September 8, 2016 Opinion and Order.

Although Father argues that the court found all of the factors to be "essentially equal", it is clear from a review of the Opinion and Order dated September 8, 2016 that, while the court had positive things to say about each party regarding most relevant factors, the court in no way indicated that it had resolved the factors equally in favor of both Mother and Father. The court determined the appropriate weight to give each factor in rendering its opinion. In particular, the court noted that Mother was more capable of tending to more of the parental duties for the children in light of the inherent flexibility of her work schedule and that Mother was better suited to attend to the daily physical, emotional, developmental, educational, and special needs of the children in light of the flexibility of her work schedule and stronger bond with all three children. While both parties have been involved in the medical care arrangements for the children, Mother has been able to oversee the children's counseling and medical needs. *Id.* A.E. P. is hyper-active and D.M. P. suffers from social anxiety. *Id.* By all accounts, the children now perform well academically and do not have any significant behavioral problems. *Id.*

16

The court's primary focus in determining what was in the best interest of the children and most critical factor for the court's consideration in rendering its decision was the need for consistency and stability for the minor children. The court made it clear in the Opinion and Order that it believed the children were performing well academically and did not have any significant behavioral problems. The court noted that it believed that the children's current stability was as a direct result of the consistent and predictable routine that the parties have followed with respect to the custody schedule. (N.T., September 8, 2016 Opinion and Order at 9)

Moreover, the court had serious reservations about granting shared custody to the parties due to the high level of conflict between the parties. (N.T., September 8, 2016 Opinion and Order at 9-10) The parties do not discuss issues related to custody of the children in person or over the telephone and Mother has insisted that all communication be done solely by text message. *Id.*

The court did not commit an error of law and/or abuse its discretion by maintaining the agreed upon schedule of custody wherein Mother exercised primary physical custody and Father exercised periods of partial physical custody. The court did not find convincing Father's contention that a modified physical custody schedule would enhance the stability provided for these children. Simply put, while recognizing their individualized situations and limitations, the court believed that the minor children have adjusted in a positive manner under the current custodial arrangement. While recognizing Father's desire to spend more time with his children, the court was simply unwilling to make adjustments to a custodial schedule that appears to have so benefitted these minor children. The evidence of record indicated that the children were thriving under the custody schedule that the parties agreed to follow when they separated before

17

Father filed a custody action against Mother. The court's denial of Father's request for shared physical custody of the children was in no way manifestly unreasonable or the result of partiality, prejudice, bias, or ill will; rather, the court's decision was based primarily on the need for consistency and stability for the children. Based upon the testimony of the parties and the children, as well as the weight given to the custody factors, the court determined that the schedule agreed previously upon by the parties was one that provided consistency and stability for the children and should continue to be the schedule followed by the parties. Accordingly, the court denied Father's request for shared physical custody of the children.

The court notes that, in the September 8, 2016 Opinion and Order, the court actually sought to increase Father's time with the youngest two children by providing each of them to spend more one-on-one time with Father pursuant to their specific requests.

## V.   CONCLUSION

Because the court utilized a complete record, analyzed the record based on the all factors enumerated in 23 Pa. C.S.A. §5328 and 23 Pa. C.S.A. §§5329/5330, and has given an extensive explanation of such above, it should be entitled to the broadest of all scopes of review, which is abuse of discretion. K.L.H. v. G.D.H., 464 A.2d 1368, 1371 (Pa. Super. Ct. 1983). The court does not believe that it has overridden or misapplied the law, and does not believe that its conclusion was manifestly unreasonable or the result of partiality, prejudice, bias, or ill will, as shown by the evidence of record. N.H.M. v. P.O.T., 947 A.2d 1268, 1272 (Pa. Super. Ct. 2008). The court carefully considered the best interests of the children, and as a result, entered an order

18

granting shared legal custody to the parties; primary physical custody to Mother; and, periods of partial physical custody to Father.

BY THE COURT:

_____
MERRILL M. SPAHN, JR., JUDGE

ATTEST: _____
Deputy

cc: Holly S. Filius, Esquire, Counsel for Plaintiff
James D. Wolman, Esquire, Counsel for Defendant

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA. R.C.P. NO. 236
NOTIFICATION - THE ATTACHED DOCUMENT
HAS BEEN FILED IN THE CASE
PROTHONOTARY OF LANCASTER CO., PA
DATE: 11-8-16

19